# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS

### Civil Action No. 4:22-cv-00249-ALM

DIVYA GADASALLI, an individual,

     Plaintiff,

v.

JERRY BULASA, an individual;
DONG LIAN, an individual; DANYUN LIN, an individual;
TD BANK, N.A., a national banking association;
ABACUS FEDERAL SAVINGS BANK, a federal savings bank;
BINANCE HOLDINGS, LTD. d/b/a Binance, a foreign company; and
POLONIEX, LLC, a Delaware limited liability company;

     Defendants.

_____/

## DECLARATION OF DAVID C. SILVER

Pursuant to 28 U.S.C. § 1746, I, DAVID C. SILVER, declare the following:

1.     My name is David C. Silver.  I am more than 21-years-old and make this Declaration based upon my personal knowledge and review of the relevant documents.

2.     I am an attorney currently representing the Plaintiff in the above-captioned lawsuit.

3.     Defendant JERRY BULASA is alleged in Plaintiff's Complaint to have stolen from Plaintiff approximately Eight Million Dollars ($8,000,000.00).

4.     To this Declaration, I have attached as **Exhibit "A"** a true and correct copy of a letter prepared by my law firm, and sent by Plaintiff, to Defendant BULASA on March 30, 2022.  The letter:

    a.   apprises Defendant BULASA of this lawsuit;

    b.   provides Defendant BULASA a copy of the Complaint, Civil Action Summons, the original Motion for Temporary Restraining Order, and the Order denying that motion [Docket Entry Nos. 1, 2, 3, 10];

    c.   informs Defendant BULASA that although the Motion for Temporary Restraining Order was denied by the Court because Defendant BULASA had not been provided prior notice of the relief sought therein; Plaintiff would be reapplying to the Court for the same relief following notice to Defendant BULASA; and

    d.   suggests Defendant BULASA appear before the Court to defend his rights and his legal interests as he sees prudent.

5.      The letter to Defendant BULASA was sent through the electronic messaging service WhatsApp -- the means of communication through which Plaintiff and Defendant BULASA have communicated and which Plaintiff and Defendant BULASA have used to correspond with one another dozens of times per day, including several times on the date the letter was sent.

6.      As of the filing of this Declaration, I have not received any communications from Defendant BULASA in response to the letter.


FURTHER DECLARANT SAYETH NAUGHT.


## **VERIFICATION**

I, DAVID C. SILVER, hereby verify and declare under penalty of perjury that I am counsel for Plaintiffs in the above-captioned matter, that I have read the foregoing Declaration and know the contents thereof, and that the matters contained in the Declaration are true to my own knowledge

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.


     /s/ David C. Silver
DAVID C. SILVER

DATED this __30th__ day of March 2022.

# EXHIBIT "A"



SilverMillerLaw.com

**4450 NW 126th Avenue - Suite 101**
**Coral Springs, Florida 33065**
**Florida: (954) 516-6000**
**Maryland: (240) 516-6000**
**Washington, D.C.: (202) 852-6000**

March 30, 2022

**Via WhatsApp Only**
Jerry Bulasa
WhatsApp: 607-258-9898

Re:   Divya Gadasalli v. Jerry Bulasa; Dong Lian; Dayun Lin; TD Bank; Abacus Federal
      Savings Bank; Binance Holdings, Ltd.; and Poloniex, LLC
      U.S. District Court – E.D. Texas - Case No. 4:22-cv-00249-ALM

Dear Mr. Bulasa:

We are counsel for the plaintiff (Divya Gadasalli) in the above-referenced lawsuit pending in the United States District Court for the Eastern District of Texas.  You are named as a defendant in the lawsuit.

Enclosed herewith for your review are the following documents that have been filed with, or issued by, the Court:

1.  Complaint for Damages and Equitable Relief [Docket Entry No. ("DE") 1]

2.  Emergency Motion for Temporary Restraining Order Without Notice against Defendant Jerry Bulasa [DE 2]

3.  Civil Action Summons - Jerry Bulasa [DE 3]

4.  Order Denying Without Prejudice Emergency Motion for TRO Without Notice [DE 10]

Although the above-referenced motion was denied by the Court because you had not been provided prior notice of the relief sought therein; now that we have provided you notice, we will be reapplying to the Court for the same relief.  To the extent you wish to oppose the relief requested, you should appear before the Court to defend your rights and/or your legal interests as you see prudent.

Additionally, formal service of process upon you will be effectuated shortly, unless you are willing to waive formal service.  If you are willing to waive formal service, please let me know; and I will send you the necessary paperwork to register with the Court that agreement (which gives you some additional time to file your formal response to the Complaint).

**Furthermore, because the claim is now in formal litigation, we demand that you preserve all electronically stored information, copies and backup, along with any paper files which you maintain, relevant to this dispute.**  Plaintiff will be seeking in discovery electronic data in your custody and control that is relevant to this action.  Plaintiff considers this electronic data and paper files to be valuable and irreplaceable sources of discoverable information in this matter.  I further trust that you will continue to preserve such electronic data and paper files throughout this litigation.

Jerry Bulasa
March 30, 2022
- Page 2 of 2 -

Lastly, because this matter is now in litigation, I request that you not contact my client directly. All communications from you that you wish my client to read should be directed to my law firm and not to her.

I look forward to hearing from you about this very serious, urgent mater.  PLEASE GOVERN YOURSELF ACCORDINGLY.

Very Truly Yours,

David C. Silver

Enclosures

cc:     Jason S. Miller, Esq. (SILVER MILLER)



# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS

Civil Action No. _____

DIVYA GADASALLI, an individual,

     Plaintiff,

v.

JERRY BULASA, an individual;
DONG LIAN, an individual; DANYUN LIN, an individual;
TD BANK, N.A., a national banking association;
ABACUS FEDERAL SAVINGS BANK, a federal savings bank;
BINANCE HOLDINGS, LTD. d/b/a Binance, a foreign company; and
POLONIEX, LLC, a Delaware limited liability company,

     Defendants.

_____/

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff DIVYA GADASALLI, an individual (hereafter referred to as "Plaintiff"), by and through undersigned counsel, hereby sues Defendants JERRY BULASA, an individual; DONG LIAN, an individual; DANYUN LIN, an individual; TD BANK, N.A., a national banking association; ABACUS FEDERAL SAVINGS BANK, a federal savings bank; BINANCE HOLDINGS, LTD. d/b/a Binance, a foreign company; and POLONIEX, LLC, a Delaware limited liability company; for damages and equitable relief. As grounds therefor, Plaintiff alleges the following:

## PRELIMINARY STATEMENT

1.     This action arises from a highly-sophisticated and fraudulent paramour scheme -- a "sha zhu pan" or "pig butchering" scam -- that sought to, and ultimately did, steal from Plaintiff a sum greater than Eight Million Dollars ($8,000,000.00).

2.     "Sha zhu pan" is a Chinese phrase that is translated to English as "pig butchering" to describe the process in which the offender builds a relationship with the victim over months --

frequently romantic, in which the offender showers the victim with messages of love and affection to emotionally "fatten them up" -- similar to fattening a pig, before enticing the victim to invest in a fake company and, metaphorically, slaughtering the victim.

3.     Plaintiff was victimized by such a scam.

4.     After meeting online on popular dating service Tinder and communicating frequently via the multi-platform messaging app WhatsApp, Plaintiff and JERRY BULASA ("Defendant BULASA") sparked and built what appeared to Plaintiff to be a deeply-held affection for, and interest in, one another.

5.     As their relationship progressed and Plaintiff's trust in Defendant BULASA grew deeper Defendant BULASA -- with false promises of romance and of financial prosperity through cryptocurrency investments -- induced from Plaintiff monetary transfers with financially devastating results.

6.     In all, Defendant BULASA induced from Plaintiff monetary transfers in a total sum that exceeds Eight Million Dollars ($8,000,000.00).

7.     To effectuate his scheme, Defendant BULASA enlisted Defendants DONG LIAN and DANYUN LIN to assist in receiving from Plaintiff fraudulently procured wire transfers to bank accounts Defendants LIAN and LIN maintained at TD BANK, N.A. and ABACUS FEDERAL SAVINGS BANK -- wire transfers that were ultimately placed under Defendant BULASA's control.

8.     Just a few short months after Plaintiff had transferred her funds and cryptocurrency holdings to Defendant BULASA's control, the $8,000,000.00 in fiat currency and cryptocurrency amassed with those funds were stolen from Plaintiff by Defendant BULASA.

9.     As a result of Defendants' negligent and/or fraudulent behavior, Plaintiff has suffered grave economic harm for which she seeks compensatory relief.

**SILVER MILLER**
4450 NW 126th Avenue - Suite 101 • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

## PARTIES, JURISDICTION, AND VENUE

### THE PARTIES

#### Plaintiff

10.     Plaintiff DIVYA GADASALLI is an individual domiciled in Plano, Texas, is a citizen of the state of Texas, and is *sui juris*.

#### Defendants

11.     Defendant JERRY BULASA is an individual of Chinese heritage believed to be domiciled in New York, New York, and is *sui juris*.  According to his self-published social media profile, Defendant BULASA is from New York, NY.



Although his Facebook profile also indicates that he "*lives in Buffalo, New York*," Defendant BULASA represented to Plaintiff that he actually lives in Brooklyn, New York and works in New York City.

12.     Defendant DONG LIAN ("Defendant LIAN") is an individual believed to be domiciled in New York, New York and is *sui juris*.

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

13.     Defendant DANYUN LIN ("Defendant LIN") is an individual believed to be domiciled in New York, New York and is *sui juris*.

14.     Upon information and belief, Defendant BULASA, Defendant LIAN, and Defendant LIN might be the same person or, in the alternative, are three individuals who conspired with one another to perpetrate upon Plaintiff the fraud detailed herein.

15.     Defendant TD BANK, N.A. ("TD BANK") is a national banking association federally chartered pursuant to the National Bank Act (12 U.S.C. § 38, *et seq.*) and supervised by the federal Office of the Comptroller of the Currency.  TD BANK's principal place of business is in Cherry Hill, New Jersey.  Furthermore, TD BANK is a subsidiary of THE TORONTO DOMINION BANK and a member of the family of companies collectively known as "TD BANK GROUP."

16.     Defendant ABACUS FEDERAL SAVINGS BANK ("ABACUS BANK") is a federal savings bank with its headquarters in New York, New York.  According to its website, ABACUS BANK was founded to provide financial services to immigrants and local residents of lower Manhattan.  The bank now has six (6) branches covering New York, New Jersey and Pennsylvania. ABACUS BANK provides deposit services, safe deposit boxes and loans for both residential and commercial real estate properties to its communities.

17.     Defendant BINANCE HOLDINGS, LTD. d/b/a Binance ("BINANCE") is a foreign company which, upon information and belief, is registered and headquartered with its principal place of business in the Cayman Islands, though it professes to not have a principal executive office.[1] BINANCE is a digital currency wallet and money transmitter services platform where merchants and consumers exchange digital currencies like bitcoin and Ether.

---

[1] Paddy Baker, *Binance Doesn't Have a Headquarters Because Bitcoin Doesn't, Says CEO*, COINDESK (May 8, 2020), https://www.coindesk.com/binance-doesnt-have-a-headquarters-because-bitcoin-doesnt-says-ceo.

18.     BINANCE refers to itself as an "ecosystem" comprising several interrelated components.  The company's Terms of Service define BINANCE as follows:

> **Binance** refers to an ecosystem comprising Binance websites (whose domain names include but are not limited to https://www.binance.com), mobile applications, clients, applets and other applications that are developed to offer Binance Services, and includes independently-operated platforms, websites and clients within the ecosystem (*e.g.*, Binance's Open Platform, Binance Launchpad, Binance Labs, Binance Charity, Binance DEX, Binance X, JEX, Trust Wallet, and fiat gateways).

Among the platforms/websites within the BINANCE ecosystem is Binance.US, which serves customers in the United States, including in this jurisdiction.  Collectively, all of these components of the "ecosystem" constitute BINANCE.

19.     Additionally, numerous public reports have identified BINANCE as perhaps the largest vehicle in the world through which stolen cryptocurrency assets are laundered by U.S. residents, *to wit*:

> Binance Holdings Ltd. is under investigation by the [United States] Justice Department and Internal Revenue Service, ensnaring the world's biggest cryptocurrency exchange in U.S. efforts to root out illicit activity that's thrived in the red-hot but mostly unregulated market.
>
> *              *              *
>
> The firm, like the industry it operates in, has succeeded largely outside the scope of government oversight. Binance is incorporated in the Cayman Islands and has an office in Singapore but says it lacks a single corporate headquarters. Chainalysis Inc., a blockchain forensics firm whose clients include U.S. federal agencies, concluded last year that among transactions that it examined, more funds tied to criminal activity flowed through Binance than any other crypto exchange..

20.     Furthermore, BINANCE publicly announced in January 2022 that it was teaming up with the National Cyber-Forensics and Training Alliance (NCFTA) -- an American non-profit entity with offices in spanning across the United States -- to "fight against cybercrime, ransomware, and

**SILVER MILLER**
4450 NW 126th Avenue - Suite 101 • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

terrorism financing."[2]  According to Tigran Gambaryan, Vice President of Global Intelligence and Investigations at BINANCE:

> Joining the NCFTA is an important step in our joint fight against cybercrime, securing the cryptocurrency ecosystem for the entire community.  Binance aims to be the leading contributor in the fight against cybercrime, ransomware, and terrorism financing.  We will continue our fight against cybercrime and increase our level of cooperation and transparency through our partnership with the NCFTA.[3]

The press release related to this announcement even states: "To date, Binance has cooperated with hundreds of criminal investigations, which have led to high-profile arrests, including a cybercriminal group laundering $500M in ransomware proceeds."[4]  "Cooperation" only takes place voluntarily, which BINANCE clearly has done in "hundreds of criminal investigations" and through its "partnership" with the American-based NCFTA and its activities throughout the United States, including -- upon information and belief -- within this jurisdiction

21.     At all times material hereto, Defendant BULASA has maintained -- and continues to maintain as of the date of this filing -- an account at BINANCE in which Defendant BULASA holds the cryptocurrency stolen from Plaintiff.

22.     Defendant POLONIEX, LLC ("POLONIEX") is a Delaware limited liability company with its principal place of business in Boston, Massachusetts.  POLONIEX is a wholly-owned subsidiary of Pluto Holdings, Inc. ("Pluto"), a Delaware corporation, which is a wholly-owned subsidiary of Circle Internet Financial Limited ("Circle"), an Irish private company.

---

[2] "NCFTA onboards crypto exchange Binance to fight against cybercrime," *CoinTelegraph*, Jan. 18, 2022, https://cointelegraph.com/news/ncfta-onboards-crypto-exchange-binance-to-fight-against-cybercrime

[3] "Binance Becomes the Blockchain and Cryptocurrency Industry's First to Join the National Cyber-Forensics and Training Alliance (NCFTA)", *PR Newswire*, January 18, 2022, https://www.prnewswire.com/news-releases/binance-becomes-the-blockchain-and-cryptocurrency-industrys-first-to-join-the--national-cyber-forensics-and-training-alliance-ncfta-301462332.html.

[4] *Id.*

**Other Liable Persons/Entities**

23.     In addition to Defendants, there are likely other parties who may be liable to Plaintiff, but about whom Plaintiff currently lacks specific facts to permit her to name these persons or entities as party defendants.  By not naming such persons or entities at this time, Plaintiff is not waiving her right to amend this pleading to add such parties, should the facts warrant adding such parties.

**JURISDICTION AND VENUE**

24.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs and attorneys' fees, and is an action between citizens of different states.

25.     This Court has personal jurisdiction over Defendants because they: (a) operate, conduct, engage in and/or do business within this jurisdiction; (b) committed a tort in this jurisdiction; and/or (c) reside in this jurisdiction.

**Specific Jurisdiction**

26.     This suit arises out of or relates to Defendants' contacts with this forum.

27.     Plaintiff is a resident of Texas, and she suffered harm in part because: (a) Defendant BULASA, Defendant LIAN, and Defendant LIN were together operating a financial scam that ensnared Plaintiff and stole from her several million dollars in fiat currency and cryptocurrency, and (b) BINANCE and POLONIEX's unreasonably lax AML and KYC procedures encouraged hackers by providing them a marketplace where they could easily launder stolen digital assets.

28.     Plaintiff's claims also involve harm suffered in Texas, as her cryptocurrency assets were stolen and laundered through computer servers in Texas.

29.     Plaintiff's claims also arise out of or relate to forum-related activities.  For example, Plaintiff's fraudulent inducement and conversion claims arise out of or relate to Defendant BULASA stealing, and BINANCE and POLONIEX taking possession of, Plaintiff's stolen cryptocurrency

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

when it was transferred from Plaintiff's possession in Texas to the BINANCE and POLONIEX exchanges.

30.     Exercising jurisdiction over Defendants in this forum is reasonable and comports with fair play and substantial justice.

### General Jurisdiction over Binance

31.     This Court may assert general jurisdiction over a corporation if the corporation is incorporated in Texas, if the corporation has its principal place of business in Texas, or if the corporation's affiliations with Texas are so "continuous and systematic" as to render it essentially at home here.

32.     As noted above, BINANCE voluntarily works with American law enforcement agencies to "fight against cybercrime, ransomware, and terrorism financing." Upon information and belief, those law enforcement agencies include some in Texas. For example, the Texas State Securities Board (TSSB) is one of the most active and prominent state-based regulatory bodies in the United States that investigates and prosecutes malfeasant actions by cryptocurrency businesses and harm-inducing actors. In one such prosecution, the TSSB issued a March 2021 "Cease and Desist Order" to prevent a Binance impersonator from operating in Texas under the business names "Binance Assets" and "BinanceAssets LTD" -- an Order that, upon information and belief, was issued with BINANCE's assistance and approval and which BINANCE's Chief Executive Officer (Changpeng Zhao) publicly praised on Twitter on the company's behalf:

SILVER MILLER
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

33.     Moreover, BINANCE uses various third-party companies, including companies located within this judicial district, to enable what BINANCE calls its "ecosystem" to function.

34.     BINANCE makes clear in the "Binance Terms of Use" that its users must agree to that it considers its fiat gateways, including Binance.US, to be part of the "ecosystem" that defines "Binance." After expressly defining "Binance" to include "fiat gateways" the Terms of Use also explain that the fiat gateways are part of the services BINANCE provides:

> **Binance Services** refer to various services provided to you by Binance that are based on Internet and/or blockchain technologies and offered via Binance websites, mobile applications, clients and other forms (including new ones enabled by future technological development). Binance Services include but are not limited to such Binance ecosystem components as Digital Asset Trading Platforms, the financing sector, Binance Labs, Binance Academy, Binance Charity, Binance Info, Binance Launchpad, Binance Research, Binance Chain, Binance X, Binance Fiat Gateway, existing services offered by Trust Wallet and novel services to be provided by Binance.

In short, BINANCE's Terms of Use inform consumers that a "Binance Fiat Gateway" -- one of which is San Francisco-based BAM d/b/a Binance.US -- is a service provided by BINANCE.

35.     Furthermore, in February 2022, BINANCE launched several celebrity-fueled advertisements during the Super Bowl to solicit accountholders in the United States, including in this jurisdiction.

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

36.     According to a BINANCE press release:

> The global campaign – featuring global superstar and entrepreneur J Balvin, all-star basketball forward Jimmy Butler and mixed martial arts fighter Valentina Shevchenko – focuses on encouraging consumers to do the research and learn crypto themselves, so they can be empowered and accountable for their own financial freedom and success.
>
> On February 13, the day of the Big Game, for every commercial aired during the game with a celebrity "talking crypto", viewers are encouraged to sound Binance's #CryptoCelebAlert at CryptoCelebAlert.com to claim one of 2,222 POAP NFTs featuring Jimmy Butler. More importantly, they can access an easy-to-read crypto primer to better understand the basics of crypto.[5]

37.     Jimmy Butler, one of the featured celebrities promoting BINANCE, was born and raised in Houston, TX and played part of his collegiate basketball career in Texas. He now has over 6,500,000 followers on Instagram, more than 2,500,000 followers on Facebook, and more than 800,000 followers on Twitter.

38.     As Mr. Butler himself espouses in the video on CryptoCelebAlert.com: "*BINANCE and I, we're here to tell you: Trust yourself, and do your own research.*"



---

[5]     https://www.binance.com/en/blog/community/binance-unites-j-balvin-jimmy-butler-and-valentina-shevchenko-to-take-on-big-game-crypto-ads-invites-fans-to-sound-the-cryptocelebalert-and-trust-themselves-to-learn-crypto-421499824684903392.

SILVER MILLER
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Mr. Butler -- a basketball celebrity with a legion of fans across Texas and elsewhere -- is clearly promoting BINANCE's business interests in this jurisdiction to his many followers.

39.     Technology has opened up new avenues for solicitation.  A new means of solicitation, though, is not any less of a solicitation.

40.     In addition, many other cryptocurrency owners in the United States use BINANCE's services -- even where those services are not permitted by law and where BINANCE publicly claims it does not provide its services.

41.     While BINANCE publicly claims it does not permit United States-based customers to use its services -- something it purports to monitor by tracking the geo-location of the IP Address used by the customer to login to BINANCE -- that supposed barrier is easily overcome through methods of which BINANCE is well-aware and which BINANCE tacitly permits.

42.     To evade geo-location tracking monitors, a customer need only use a Virtual Private Network (VPN) that spoofs the user's actual location.  Instead of marking his/her IP Address with a location in the United States, the BINANCE user employs a VPN so that BINANCE's records will reflect that the user is logging in from a non-U.S. territory that is supported by BINANCE.

43.     One such VPN is PureVPN, which describes the simple process thusly:



44.     As PureVPN explains, as long as the location the user choose through his/her VPN is a non-U.S. country supported by BINANCE, the user's log-in to BINANCE will proceed unfettered:



45.     BINANCE is readily aware that U.S.-based users -- including those based within this jurisdiction -- utilize VPN services to access BINANCE; and BINANCE does not prevent such use.

46.     To the extent BINANCE claims it has no or few users in this jurisdiction, that claim is belied by the number of BINANCE accountholders in this jurisdiction who take simple steps (well known to BINANCE) to evade BINANCE's lax barriers to entry.

47.     A July 2021 report by Inca Digital (a data firm whose technology is used by the U.S. Commodity Future Trading Commission for investigations and market surveillance) highlighted this

fact by noting that hundreds of Americans use VPNs to trade cryptocurrency on BINANCE in a manner that is "an open secret in the industry."

48.     Upon information and belief, even document production from BINANCE would not definitively demonstrate that U.S.-based users do not use VPNs to access BINANCE's platforms, as it is not believed that BINANCE tracks such things; and IP Address records for BINANCE users are often tainted with spoofed IP Addresses through this simple method of entry.

## General Jurisdiction over Poloniex

49.     POLONIEX is registered with the Financial Crimes Enforcement Network ("FinCEN") as a Money Services Business ("MSB"), registration number 31000091844018. POLONIEX's parent company Circle Internet Financial, Inc. is also registered with FinCEN as an MSB, registration number 31000110033860.

50.     Much like BINANCE has many users in the United States despite public assertions that its services are not available to U.S.-based users, POLONIEX has many cryptocurrency accountholders in the United States who use POLONIEX's services -- even where those services are not permitted by law and where POLONIEX publicly claims it does not provide its services.

51.     According to readily-available VPN services, using POLONIEX in the United States is easily accomplished despite POLONIEX's public pronouncements to the contrary:

### 7. Poloniex

**Do I Need a VPN for Poloniex?**

Poloniex isn't available to the citizens of Cuba, Iran, North Korea, Sudan, Syria, and the US. If you're in these countries, you'll have to use a VPN to access the exchange.

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

52.     As one site explains:

> **Is Poloniex available in my country?**
>
> Poloniex doesn't abide by regulations, meaning that it operates just about everywhere in the world.
>
> If you're happy to just use Poloniex to trade cryptos, you can even use it in banned regions, such as the USA, using a VPN.

53.     Just as with BINANCE, upon information and belief, even document production from POLONIEX would not definitively demonstrate that U.S.-based users do not use VPNs to access POLONIEX's platforms, as it is not believed that POLONIEX tracks such things; and IP Address records for POLONIEX users are often tainted with spoofed IP Addresses through this simple method of entry.

54.     In light of the foregoing, it is believed that POLONIEX has continuous and systematic connections to the United States, including this forum.

55.     Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1391 because the causes of action accrued in this jurisdiction.

## GENERAL FACTUAL ALLEGATIONS

56.     In or about May 2021, Plaintiff -- on popular online dating service Tinder -- met a man who claimed his name was JERRY BULASA.

57.     Defendant BULASA represented to Plaintiff that he lives and works in New York City, NY, where he assists in running his father's business and takes care of his father, who was purportedly in poor health.

58.     Plaintiff and Defendant BULASA quickly developed what appeared to be a mutual personal interest in one another, and they began communicating frequently via the multi-platform messaging app WhatsApp.

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

59.     Their communications also delved into discussions of cryptocurrency investing, with Defendant BULASA soliciting Plaintiff to entrust with him some of her funds so he could help her grow those investments into greater wealth.

60.     Defendant BULASA portrayed himself to Plaintiff to be a very successful and savvy cryptocurrency investor; and the investment instructions he induced her to follow were specific down to the hour and minute at which she should place her funds with him, as those times would purportedly provide Plaintiff the best investment outcome.

61.     Relying upon the representations of security and profitability Defendant BULASA made to her, Plaintiff used some family funds to invest in cryptocurrency at Defendant BULASA's instruction.

62.     Plaintiff, based on Defendant BULASA's representations and advice, wired Three Hundred Ninety-Six Dollars ($396,000.00) to bank accounts at TD BANK and ABACUS BANK purportedly maintained or controlled by Defendants DONG LIAN and DANYUN LIN -- who Defendant BULASA told Plaintiff were investors with whom he worked who already held cryptocurrency in accounts Defendant BULASA oversaw, thusly:

| DATE OF WIRE TRANSFER | BANK | BANK ACCOUNT TO WHICH FUNDS WERE WIRED | NAMED ACCOUNT HOLDER | AMOUNT TRANSFERRED |
|---|---|---|---|---|
| May 13, 2021 | TD BANK | ***8000 | Dong Lian | $10,000.00 |
| May 17, 2021 | ABACUS | ***0334 | Dong Lian | $86,000.00 |
| May 26, 2021 | ABACUS | ***0334 | Dong Lian | $100,000.00 |
| June 2, 2021 | TD BANK | ***2161 | Danyun Lin | $200,000.00 |
| | | | TOTAL | $396,000.00 |

63.     Upon information and belief, Defendant BULASA, Defendant LIAN, and Defendant LIN might be the same person or, in the alternative, three individuals who conspired with one another to perpetrate the fraud upon Plaintiff detailed herein.

SILVER MILLER
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

64.     In return for the funds wired to them, Defendant LIAN and Defendant LIN transferred to Plaintiff cryptocurrency, which she then forwarded to a cryptocurrency account controlled by Defendant BULASA so he could invest it in accordance with his purported cryptocurrency expertise.

65.     The investment instructions Defendant BULASA provided Plaintiff appeared to be producing positive results, and the personal relationship between Plaintiff and Defendant BULASA was likewise progressing with positive expressions of mutual affection.  Based on the trust and emotional connection she had placed in Defendant BULASA, Plaintiff continued to follow his investment advice.

66.     Under Defendant BULASA's guidance, Plaintiff opened a cryptocurrency account at U.S.-based cryptocurrency exchange Coinbase which she funded with additional family monies that were used to purchase cryptocurrency that was subsequently transferred to cryptocurrency investment firm accounts operated by Defendant BULASA.

67.     In addition to the May 2021 and early-June 2021 bank wire transfers to Defendant LIAN and Defendant LIN, Plaintiff funded her Coinbase account with approximately Six Million Dollars ($6,000,000.00); used those funds to purchase Tether[6], and then sent those Tether to an investment account allegedly created for Plaintiff that was overseen by Defendant BULASA.

68.     According to Defendant BULASA, the external investment account into which Plaintiff's Tether was being deposited was maintained at cryptocurrency investment firm CoinFund, which he represented to Plaintiff had just been renamed Digital Fund.

---

[6] Tether (often abbreviated with the symbol "USDT") is a cryptocurrency hosted on the Ethereum and Bitcoin blockchains.  It is categorized as a "stablecoin," because it was originally designed so that each coin would always be worth One Dollar ($1.00 USD).  Thus, one USDT is worth roughly $1.00; and 6,000,000 USDT are worth roughly $6,000,000.00.  Tether has one of the largest market caps, and is one of the most widely-circulated cryptocurrencies, in the world.

SILVER MILLER
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

69.     Upon information and belief, CoinFund is a legitimate cryptocurrency investment firm with offices in New York City, NY and Miami, FL that never changed its name to Digital Fund; and Plaintiff never actually maintained an account at CoinFund.

70.     Upon further information and belief, Digital Fund is a fake cryptocurrency exchange that served as an engine of theft for Defendant BULASA -- providing him a mechanism to proffer Plaintiff false account statements and real-time values of cryptocurrency markets on legitimate exchanges that masked the fraudulent scheme Defendant BULASA was perpetrating upon Plaintiff.

71.     By December 2021, Plaintiff's Digital Fund account had purportedly grown to a value of approximately Ten Million Dollars ($10,000,000.00); however, Defendant BULASA told Plaintiff she was unable to withdraw any of those funds due to obstacles Digital Fund had purportedly implemented.

72.     Defendant BULASA -- who also purported to maintain his own account at Digital Fund -- told Plaintiff he had bundled his and Plaintiff's Digital Fund accounts together; and she was unable to withdraw any funds from her account while there remained an outstanding amount of annual fees on Defendant BULASA's account.

73.     In December 2021, Plaintiff transmitted Seven Hundred Thousand Dollars ($700,000.00) to satisfy the supposed annual fee encumbrance on her Digital Fund account and another Seven Hundred Thousand Dollars ($700,000.00) to satisfy the supposed annual fee encumbrance on Defendant BULASA's Digital Fund account.

74.     Even after Plaintiff had satisfied those purported Digital Fund requirements, Defendant BULASA told Plaintiff that additional hurdles prevented Plaintiff from accessing her invested funds.

75.     After transferring approximately another Five Hundred Thousand Dollars ($500,000.00) to access her funds, Defendant BULASA represented to Plaintiff that even more

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

obstacles remained and that Plaintiff would have to contribute several hundred thousand more dollars to unencumber both his and Plaintiff's cryptocurrency portfolios.

76.     Frustrated and unable to see any viable way out of the financial hole into which Defendant BULASA had placed Plaintiff, Plaintiff acquiesced and transferred several hundred thousand more dollars to unencumber and access her cryptocurrency.

77.     Having already placed approximately Eight Million Dollars ($8,000,000.00) under Defendant BULASA's control -- and sensing that Defendant BULASA could no longer be trusted -- Plaintiff contacted Defendant BULASA to determine how she could uncouple her assets from his and transfer those assets to an account somewhere under her direct control.

78.     In response to Plaintiff's inquiry, Defendant BULASA -- in or about February 2022 -- provided multiple, implausible excuses as to why Plaintiff could not retain control over her own assets.

79.     Through blockchain analytics tracing the path of Plaintiff's cryptocurrency assets, it has become apparent that Defendant BULASA has stolen all of Plaintiff's assets; and those assets have been transferred to cryptocurrency accounts under Defendant BULASA's sole control or have been liquidated into fiat currency and dissipated by Defendant BULASA.

80.     For example, Plaintiff's stolen assets have been traced to the following cryptocurrency wallet addresses at BINANCE and POLONIEX (among others), which are believed to be owned or controlled by Defendant BULASA or an unknown third-party to whom he has transferred those stolen assets and which have been used to launder the assets stolen from Plaintiff:

| # | EXCHANGE | DESTINATION ADDRESS | ASSET TYPE | ASSETS UNDER CLAIM (average confirmed with five separate tracing methodologies; in cryptocurrency unit) |
|---|---|---|---|---|
| 1 | Binance | 9ea12866d4b69b347ffff084fc4bb3b97cc4d4b4 | USDT | 351,456.322587 |

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

| 2 | Binance | f52fb20441641e2c446c7db9c2ebee9b80611679 | USDT | 138,928.623847 |
| 3 | Binance | 1838f42bc8e28f0799e21501620e5a93dd32f107 | USDT | 126,574.190249 |
| 4 | Binance | 9c9ba31722261aced59373b53cf567ca96243f57 | USDT | 105,389.848449 |
| 5 | Binance | 2944f6937dcf1ef0b4a005619a35c2e4757bcee0 | USDT | 98,964.245785 |
| 6 | Binance | e42bee8902895f6f228e1b20e40a7d410ff508bf | USDT | 93,679.797809 |
| 7 | Binance | b22270560cdec8cf281ea6f87c14cb24037421be | USDT | 89,273.852767 |
| 8 | Binance | e15ba3e0824f97f4b0f841cf030021097eaf2108 | USDT | 87,098.577482 |
| 9 | Binance | 497025d44131d4a261705368f8c1cf4b6025897a | USDT | 58,462.166853 |
| 10 | Binance | 7f90ef04ba3ed5b1f7908d8e0463a6975227d4f8 | USDT | 18,795.819565 |
| 11 | Binance | 1a2893432d0615a0764a311b5d2a6062dc212c9d | USDT | 18,717.887253 |
| 12 | Binance | 5e65b32ee4f6a63a0678a43f9439eb421457d950 | USDT | 13,903.728216 |
| 13 | Binance | 70fc0e221578f6d47f958cfa2bff1f9320bc6eec | USDT | 8,402.510102 |
| 14 | Binance | 430ddd14ad41c97dd09d8df94e00f3eb65b7c694 | USDT | 4,877.660928 |
| 15 | Binance | 44a11506b275dc619a1c5a20dc8969ea305c8dd7 | USDT | 4,391.864424 |
| 16 | Binance | 88dfbd93f509d0b3dcbfd86ee9d6d036ca199ea5 | USDT | 4,212.498994 |
| 17 | Binance | 1fe77c00c81e32c50494e2c73a1ce945dd7215a0 | USDT | 3,908.191703 |
| 18 | Binance | 7db77e4c967c95a5a9e2ec57ec21788dab481893 | USDT | 2,281.305709 |
| 19 | Binance | 6d6ab7dbc46ab652eaf4b09827e0de9cc18bc364 | USDT | 1,406.698380 |
| | | | TOTAL | 1,230,725.791102 USDT |

| 1 | Poloniex | 1ArN6zUiCYuyQVrujb5iMUvBXw7HxzYjPo | BTC | 10.11113414 |
| 2 | Poloniex | 14kahPazCQEyEwKmeR5JG8mZh66W9caQqe | BTC | 7.50000000 |
| 3 | Poloniex | 1LQ9Mrbvdv5QFe5Pdzw7sTxHexkpRoHmMN | BTC | 7.312601758 |
| 4 | Poloniex | 12XwnGBjU6Hp4ecVv61tRDSGdW3SXkt8CP | BTC | 6.920274378 |
| 5 | Poloniex | 1CCNdKHhqtdK4ZauZ7PWgFvDBpZ59MXjP2 | BTC | 6.11926921 |
| 6 | Poloniex | 17Z3S2pfJGQj6QH39j1UPfoGJJ2kqkWSem | BTC | 4.45347371 |
| 7 | Poloniex | 13mLXtUtSkvPqU8qAv81njLSwe4DAnCrPR | BTC | 2.976871542 |
| 8 | Poloniex | 1Ko5ntJvnGhUYfTmseFJxBuereCi6TFTfp | BTC | 0.51755494 |
| | | | TOTAL | 45.91117968 BTC[7] |

---

[7] As of the date of this filing, 45.91117968 BTC are valued at approximately $2,203,736.62 USD ($48,000.00 per BTC).

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

81.     As of the date of this filing, blockchain analytics have traced Plaintiff's stolen funds to and/or through the following cryptocurrency wallet addresses (among others), which are believed to be owned or controlled by Defendant BULASA or an unknown third-party to whom he has transferred those stolen assets and which are believed to still be holding some of the assets stolen from Plaintiff:

| # | DESTINATION ADDRESS | ASSET TYPE | ASSETS UNDER CLAIM (average confirmed with five separate tracing methodologies; in cryptocurrency unit) |
|---|---|---|---|
| 1 | 365aca59aeb17df6e3a76ec2bdbefe9983f586c5 | USDT | 210,075 |
| 2 | e71010a991fff28c221dfb2aca207c129ff9cf1b | USDT | 86,695.1041952 |
| 3 | 6cca6bde94ad75bfb1e21720677ae9c1f296f607 | USDT | 53,522 |
| 4 | cdce3f15ecb6da711700994fa7c838e45f107f24 | USDT | 49,354.6025112 |
| 5 | f7b7a705d7ac47452eaaff796601271bfc42c43a | USDT | 41,678.0702184 |
| 6 | 3b53e49200546344d7bb31a334e24421a3cb4451 | USDT | 22,359.9849322 |
| 7 | 98022e367dceb0a25317f0e68b949ad3bd7a3571 | USDT | 18,591.4968140 |
| 8 | 2dd59e945a3c036444e37f31d3b2f001d93eefb1 | USDT | 17,020.0423440 |
| 9 | 5fcad1e9ffdc4f207dfe7f0cfdb67d286b0b0162 | USDT | 16,282.1040658 |
| 10 | 7d65a55862aa569f96e31e50c4e6def0b34f05ed | USDT | 7,403.3527816 |
| 11 | 6af4eba5f8b339512960ebef11e02815c42b8c00 | USDT | 5,352.8389960 |
| 12 | 4d27a8e567e4f7b51d1a07ff0cc032d78b0d43d0 | USDT | 3,141.6391760 |
| 13 | 3cb3c884b033fc0dd22c2c8439edd9eeece8818c | USDT | 1,690.8607544 |
| 14 | 12a2dfcac61118e26197ed1a581099faf4dc16e2 | USDT | 655.0425430 |
| 15 | a21675225d76975635cea38b70e874f0a685bf1d | USDT | 414.5838890 |
| 16 | e01d86cf1fa41d6d5d685b3c13555c79fc3aa798 | USDT | 15.9851010 |
| 17 | 5ea54787b09bc81c191a4037f36313d82e407a64 | USDT | 6.3173528 |
| 18 | a2193eb903a185ae3afd05ef461687a221e04adb | USDT | 4.4477338 |
| 19 | 3e362670c657b6e45e792510cd57980466f09194 | USDT | 0.1941922 |
| | | TOTAL | 534,263.6676006 USDT |

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

82.     As a result of the misrepresentations and fraud perpetrated upon her by a would-be paramour, Plaintiff has suffered damages, including but not limited to:

    (a)  Eight Million Dollars ($8,000,000.00) in principal;

    (b)  Lost profits;

    (c)  Interest; and

    (d)  Costs and Expenses.

Plaintiff will be prepared to demonstrate her damages more fully in an amount that will be proven at trial.

83.     Plaintiff duly performed all of her duties and obligations, and any conditions precedent to Plaintiff bringing this action have occurred, have been performed, or else have been excused or waived.

84.     To enforce her rights, Plaintiff has retained undersigned counsel and is obligated to pay counsel a reasonable fee for its services.

## COUNT I – FRAUDULENT INDUCEMENT
### [AGAINST DEFENDANT BULASA]

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 - 84 above, and further alleges:

85.     Commencing in or about May 2021, Defendant BULASA made multiple representations and statements to Plaintiffs, including but not limited to the following:

    (a)  Plaintiff would be wise to invest funds in cryptocurrency;

    (b)  Defendant BULASA was qualified to facilitate Plaintiff's investments in cryptocurrency;

    (c)  Plaintiff could trust Defendant BULASA to safely manage or oversee the cryptocurrency assets Plaintiff would be purchasing; and

    (d)  Defendant BULASA was, at all times, acting in Plaintiff's best interest.

86.     While making the above-referenced representations to Plaintiff, Defendant BULASA purposely withheld from her the following:

- 21 -

(a) Defendant BULASA was not qualified to facilitate Plaintiff's investments in cryptocurrency;

(b) Defendant BULASA could not be trusted to safely manage or oversee the cryptocurrency assets Plaintiff would be purchasing;

(c) Defendant BULASA would obstruct Plaintiff's efforts to recover her lost assets if anything should go wrong with Plaintiff's investments; and

(d) Defendant BULASA was simply operating an investment scam aimed at stealing Plaintiff's funds.

87.     Plaintiff relied on the above-listed material misrepresentations and omissions of material fact in deciding to entrust her funds to Defendant BULASA.

88.     Contrary to the representations made to Plaintiff, Defendant BULASA could not be trusted to safely manage or oversee the cryptocurrency assets in which Plaintiff invested.

89.     Defendant BULASA intended to induce Plaintiff into sending her funds to Defendant BULASA's control by making these material misrepresentations and omissions, thereby causing Plaintiff to rely upon those statements and omissions of material fact.

90.     Plaintiff reasonably and justifiably relied on Defendant BULASA's statements and omissions of material facts.

91.     As a direct and proximate result of Plaintiff's reliance on the statements and omissions of material facts made by Defendant BULASA, Plaintiff suffered damage.

WHEREFORE, Plaintiff DIVYA GADASALLI, an individual, demands entry of a judgment against Defendant JERRY BULASA, an individual; for damages, including principal, interest, lost profits, expenses, and any other relief the Court deems proper.

## COUNT II – NEGLIGENT MISREPRESENTATIONS
### [AGAINST DEFENDANT BULASA]

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 - 84 above, and further alleges:

92.     Commencing in or about May 2021, Defendant BULASA made multiple representations and statements to Plaintiffs, including but not limited to the following:

**SILVER MILLER**
4450 NW 126th Avenue - Suite 101 • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

(a) Plaintiff would be wise to invest funds in cryptocurrency;

(b) Defendant BULASA was qualified to facilitate Plaintiff's investments in cryptocurrency;

(c) Plaintiff could trust Defendant BULASA to safely manage or oversee the cryptocurrency assets Plaintiff would be purchasing; and

(d) Defendant BULASA was, at all times, acting in Plaintiff's best interest.

93. While making the above-referenced representations to Plaintiff, Defendant BULASA purposely withheld from her the following:

(a) Defendant BULASA was not qualified to facilitate Plaintiff's investments in cryptocurrency;

(b) Defendant BULASA could not be trusted to safely manage or oversee the cryptocurrency assets Plaintiff would be purchasing;

(c) Defendant BULASA would obstruct Plaintiff's efforts to recover her lost assets if anything should go wrong with Plaintiff's investments; and

(d) Defendant BULASA was simply operating an investment scam aimed at stealing Plaintiff's funds.

94. Plaintiff relied on the above-listed material misrepresentations and omissions of material fact in deciding to entrust her funds to Defendant BULASA.

95. Contrary to the representations made to Plaintiff, Defendant BULASA could not be trusted to safely manage or oversee the cryptocurrency assets in which Plaintiff invested.

96. Defendant BULASA intended to induce Plaintiff into sending her funds to Defendant BULASA's control by making these material misrepresentations and omissions, thereby causing Plaintiff to rely upon those statements and omissions of material fact.

97. Plaintiff reasonably and justifiably relied on Defendant BULASA's statements and omissions of material facts.

98. As a direct and proximate result of Plaintiff's reliance on the statements and omissions of material facts made by Defendant BULASA, Plaintiff suffered damage.

**SILVER MILLER**
4450 NW 126th Avenue - Suite 101 • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

WHEREFORE, Plaintiff DIVYA GADASALLI, an individual, demands entry of a judgment against Defendant JERRY BULASA, an individual; for damages, including principal, interest, lost profits, expenses, and any other relief the Court deems proper.

## COUNT III – CONVERSION
### [AGAINST DEFENDANT BULASA]

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 - 84 above, and further alleges:

99.     At all times material hereto, Plaintiff owned and had the right to immediately possess the cryptocurrency assets Defendant BULASA represented to her that he had secured for her in a Digital Funds account -- not just a mere right to payment for the value of those assets -- that was taken from her and transferred to, *inter alia*, the accounts owned or controlled by Defendant BULASA or an unknown third-party to whom he has transferred those stolen assets.

100.     When the stolen cryptocurrency assets were deposited by Defendant BULASA into cryptocurrency wallets he controlled, Defendant BULASA intentionally took possession of and assumed control over Plaintiff's assets.

101.     Defendant BULASA has intentionally exercised control, and continues to exercise control, over Plaintiff's cryptocurrency assets in such a way as to exclude Plaintiff from using or possessing those assets.

102.     Defendant BULASA knew the property he received was stolen or obtained in a manner constituting theft.

103.     As such, Defendant BULASA wrongfully converted Plaintiff's cryptocurrency assets.

104.     Defendant BULASA -- through actual fraud, misappropriation, conversion, theft, or other questionable means -- obtained Plaintiff's cryptocurrency, which in equity and good conscience Defendant BULASA should not be permitted to hold.

105.     The cryptocurrency assets at issue are specific, identifiable property and can be traced in assets of Defendant BULASA's account(s) at BINANCE, POLONIEX, and elsewhere.

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

106.     As a direct and proximate result of the foregoing, Plaintiff suffered the wrongful conversion of personal property whose value exceeds Seventy-Five Thousand Dollars ($75,000.00).

WHEREFORE, Plaintiff DIVYA GADASALLI, an individual, demands entry of a judgment against Defendant JERRY BULASA, an individual; for damages, including principal, interest, lost profits, expenses, and any other relief the Court deems proper.

## COUNT IV – CIVIL CONSPIRACY
### [AGAINST DEFENDANTS BULASA, LIAN, AND LIN]

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 - 84 above, and further alleges:

107.     In or around May 2021 and June 2021, Defendant BULASA, Defendant LIAN, and Defendant LIN agreed and combined to engage in a conspiracy in the following manner:

(a)  Defendant BULASA falsely induced Plaintiff to deposit with Defendants LIAN and LIN a certain amount of funds for which the three defendants represented they would, in turn, provide Plaintiff with a certain amount of cryptocurrency;

(b)  Defendant BULASA instructed Plaintiff to deposit funds into accounts at different banks (TD Bank and Abacus Bank) purportedly under Defendant LIAN's and Defendant LIN's control;

(c)  After receiving Plaintiff's wire transfer deposits, Defendant LIAN and Defendant LIN transferred to Defendant BULASA -- not to Plaintiff -- a certain amount of cryptocurrency that Defendant BULASA would purport to safeguard for Plaintiff;

(d)  The amount of cryptocurrency transferred by Defendant LIAN and Defendant LIN in return for Plaintiff's deposit was less than the cash equivalent for which Plaintiff had paid; and

(e)  After Plaintiff had deposited the funds as instructed, Defendant BULASA would then forever forestall Plaintiff's ability to access that cryptocurrency, which Defendant BULASA actually converted to his own possession.

108.     Defendant BULASA compensated Defendant LIAN and Defendant LIN for their participation in the scam.

109.     Defendant BULASA, Defendant LIAN, and Defendant LIN agreed and combined to engage in a civil conspiracy to commit the unlawful acts as described herein.

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

110.     Defendant BULASA, Defendant LIAN, and Defendant LIN combined to engage in a civil conspiracy of which the principal element was to inflict on Plaintiff wrongs and injury as described in this Complaint.

111.     Defendant BULASA, Defendant LIAN, and Defendant LIN combined to engage in a civil conspiracy that was furthered by overt acts, including the written representations made directly or indirectly to Plaintiff.

112.     Defendant LIAN and Defendant LIN -- acting in concert with Defendant BULASA -- allowed their bank accounts to be used as conduits of fraud and were financially rewarded for their participation in the conspiracy.

113.     Defendant BULASA, Defendant LIAN, and Defendant LIN understood, accepted, or explicitly or implicitly agreed to the general objectives of their scheme to inflict on Plaintiff the wrongs and injuries described in this Complaint.

114.     Defendant BULASA, Defendant LIAN, and Defendant LIN acquired, possessed, and maintained a general knowledge of the conspiracy's objectives to inflict wrongs against and injury on Plaintiff as described in this Complaint.

115.     Defendant BULASA, Defendant LIAN, and Defendant LIN combined to engage in a scheme that was intended to violate the law, and Defendant BULASA, Defendant LIAN, and Defendant LIN concealed and secreted such violations.

116.     Defendant BULASA, Defendant LIAN, and Defendant LIN combined to engage in a scheme intended to violate Plaintiff's rights.

117.     Plaintiff has suffered damage in the approximate principal sum of Three Hundred Ninety-Six Dollars ($396,000.00) as a result of Defendants' conspiracy.

WHEREFORE, Plaintiff DIVYA GADASALLI, an individual, demands entry of a judgment against Defendants JERRY BULASA, an individual; DONG LIAN, an individual; DANYUN LIN,

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

an individual; for damages, including principal, interest, lost profits, expenses, and any other relief the Court deems proper.

## COUNT V – AIDING AND ABETTING CONVERSION
### [AGAINST DEFENDANT BINANCE]

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 - 84 above, and further alleges:

118.    As noted above, Defendant BULASA -- through actual fraud, misappropriation, conversion, theft, or other questionable tortious violations -- obtained Plaintiff's cryptocurrency, which in equity and good conscience Defendant BULASA should not be permitted to hold.

119.    BINANCE has actual knowledge that cryptocurrency stolen from Plaintiff had been transferred to addresses and accounts on BINANCE's exchange by or to Defendant BULASA.

120.    Notwithstanding the actual knowledge of the theft of Plaintiff's cryptocurrency and the custody of those stolen assets in Defendant BULASA's account at BINANCE, BINANCE did not halt the further movement of those stolen funds; which allowed Defendant BULASA to abscond with, and convert to his own benefit, Plaintiff's property.

121.    BINANCE has rendered substantial assistance to Defendant BULASA in his commission of the fraud, misappropriation, conversion, theft, or other questionable tortious activity through which Defendant BULASA obtained Plaintiff's cryptocurrency.

122.    In addition, BINANCE rendered substantial assistance to Defendant BULASA by ignoring its own internal policies and procedures and by knowingly maintaining inadequate KYC/AML policies which enable skillful cryptocurrency hackers and thieves such as Defendant BULASA to steal cryptocurrency and launder it through the BINANCE ecosystem without providing valid or sufficient personal identification that would enable Plaintiff to retrieve her stolen assets.

WHEREFORE, Plaintiff DIVYA GADASALLI, an individual, demands entry of a judgment against Defendant BINANCE HOLDINGS, LTD. d/b/a Binance, a foreign company; for damages, including compensatory damages, interest, expenses, and any other relief the Court deems just and

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

proper, including imposition of a constructive trust upon the property taken from Plaintiff that is held by Defendant BULASA in an account(s) at BINANCE.

**COUNT VI – AIDING AND ABETTING CONVERSION**
**[AGAINST DEFENDANT POLONIEX]**

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 - 84 above, and further alleges:

123.    As noted above, Defendant BULASA -- through actual fraud, misappropriation, conversion, theft, or other questionable tortious violations -- obtained Plaintiff's cryptocurrency, which in equity and good conscience Defendant BULASA should not be permitted to hold.

124.    POLONIEX has actual knowledge that cryptocurrency stolen from Plaintiff had been transferred to addresses and accounts on POLONIEX's exchange by or to Defendant BULASA.

125.    Notwithstanding the actual knowledge of the theft of Plaintiff's cryptocurrency and the custody of those stolen assets in Defendant BULASA's account at POLONIEX, POLONIEX did not halt the further movement of those stolen funds; which allowed Defendant BULASA to abscond with, and convert to his own benefit, Plaintiff's property.

126.    POLONIEX has rendered substantial assistance to Defendant BULASA in his commission of the fraud, misappropriation, conversion, theft, or other questionable tortious activity through which Defendant BULASA obtained Plaintiff's cryptocurrency.

127.    In addition, POLONIEX rendered substantial assistance to Defendant BULASA by ignoring its own internal policies and procedures and by knowingly maintaining inadequate KYC/AML policies which enable skillful cryptocurrency hackers and thieves such as Defendant BULASA to steal cryptocurrency and launder it through the POLONIEX ecosystem without providing valid or sufficient personal identification that would enable Plaintiff to retrieve her stolen assets.

WHEREFORE, Plaintiff DIVYA GADASALLI, an individual, demands entry of a judgment against Defendant POLONIEX, LLC, a Delaware limited liability company; for damages, including

- 28 -

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

compensatory damages, interest, expenses, and any other relief the Court deems just and proper, including imposition of a constructive trust upon the property taken from Plaintiff that is held by Defendant BULASA in an account(s) at POLONIEX.

### COUNT VII – IMPOSITION OF A CONSTRUCTIVE TRUST AND DISGORGEMENT OF FUNDS
#### [AGAINST TD BANK]

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 - 84 above, and further alleges:

128.　Defendant BULASA, Defendant LIAN, and/or Defendant LIN are the beneficiaries of funds that were wrongfully misappropriated, converted, and stolen from Plaintiff.

129.　Although Plaintiff transferred to the ***8000 and ***2161 Accounts at TD BANK a sum total of Two Hundred Ten Thousand Dollars ($210,000.00), the amount of cryptocurrency transferred in return by Defendants LIAN and LIN was less than the cash equivalent for which Plaintiff had paid.

130.　Upon information and belief, TD BANK holds some or all of the funds wrongfully taken from Plaintiff.

131.　Any and all monies being held by TD BANK must be held in trust for Plaintiff's benefit, as Defendants LIAN and LIN are not entitled to the benefit of wrongfully misappropriated, converted, and stolen funds and cryptocurrency assets that were taken from Plaintiff.

132.　Any and all funds held by TD BANK must be disgorged to Plaintiff's benefit, as Defendants LIAN and LIN are not entitled to the benefit of wrongfully misappropriated, converted, and stolen funds and cryptocurrency assets that were taken from Plaintiff.

WHEREFORE, Plaintiff DIVYA GADASALLI, an individual, demands imposition of a constructive trust to be effectuated by Defendant TD BANK, N.A., a national banking association; and full disgorgement of all funds in TD BANK's possession, custody, or control that were wrongfully

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

misappropriated, converted, and stolen from Plaintiff; and an award of interest, costs, and any other relief the Court deems proper.

## COUNT VIII – IMPOSITION OF A CONSTRUCTIVE TRUST
## AND DISGORGEMENT OF FUNDS
### [AGAINST ABACUS BANK]

Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 - 84 above, and further alleges:

133.    Defendant BULASA and/or Defendant LIAN are the beneficiaries of funds that were wrongfully misappropriated, converted, and stolen from Plaintiff.

134.    Although Plaintiff transferred to the ***0334 Account at ABACUS BANK a sum total of One Hundred Eighty-Six Thousand Dollars ($186,000.00), the amount of cryptocurrency transferred in return by Defendant LIAN was less than the cash equivalent for which Plaintiff had paid.

135.    Upon information and belief, ABACUS BANK holds some or all of the funds wrongfully taken from Plaintiff.

136.    Any and all monies being held by ABACUS BANK must be held in trust for Plaintiff's benefit, as Defendant LIAN is not entitled to the benefit of wrongfully misappropriated, converted, and stolen funds and cryptocurrency assets that were taken from Plaintiff.

137.    Any and all funds held by TD BANK must be disgorged to Plaintiff's benefit, as Defendant LIAN is not entitled to the benefit of wrongfully misappropriated, converted, and stolen funds and cryptocurrency assets that were taken from Plaintiff.

WHEREFORE, Plaintiff DIVYA GADASALLI, an individual, demands imposition of a constructive trust to be effectuated by Defendant ABACUS FEDERAL SAVINGS BANK, a federal savings bank; and full disgorgement of all funds in ABACUS BANK's possession, custody, or control that were wrongfully misappropriated, converted, and stolen from Plaintiff; and an award of interest, costs, and any other relief the Court deems proper.

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

## RESERVATION OF RIGHTS

Plaintiff reserves her right to further amend this Complaint, upon completion of her investigation and discovery, to assert any additional claims for relief against Defendants or other parties as may be warranted under the circumstances and as allowed by law.


Respectfully submitted,

**SILVER MILLER**
*Counsel for Plaintiff*
4450 NW 126th Avenue - Suite 101
Coral Springs, Florida 33065
Telephone:      (954) 516-6000

By: _____
      DAVID C. SILVER
      Florida Bar No. 572764
      E-mail: DSilver@SilverMillerLaw.com

Dated: March __28__, 2022

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS

### Civil Action No. 4:22-cv-00249

DIVYA GADASALLI, an individual,

     Plaintiff,

v.

JERRY BULASA, an individual;
DONG LIAN, an individual; DANYUN LIN, an individual;
TD BANK, N.A., a national banking association;
ABACUS FEDERAL SAVINGS BANK, a federal savings bank;
BINANCE HOLDINGS, LTD. d/b/a Binance, a foreign company; and
POLONIEX, LLC, a Delaware limited liability company;

     Defendants.

_____/

## EMERGENCY MOTION FOR
## TEMPORARY RESTRAINING ORDER WITHOUT NOTICE
## AGAINST DEFENDANT JERRY BULASA

Plaintiff DIVYA GADASALLI, an individual ("Plaintiff"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 65(b) as well as Local Rule CV-7(l), hereby respectfully requests that this Court enter without notice to Defendant JERRY BULASA, an individual ("Defendant BULASA"), a Temporary Restraining Order (TRO) against him freezing his assets -- including certain cryptocurrency accounts at BINANCE HOLDINGS, LTD. d/b/a Binance, a foreign company ("BINANCE"); and POLONIEX, LLC, a Delaware limited liability company ("POLONIEX"); and any Cryptocurrency Wallet Addresses (defined below) maintained or controlled by Defendant BULASA, for him, or by/for any entity under his control.

In support of the request for a TRO herein, Plaintiff alleges as follows:

## FACTUAL BACKGROUND

This action arises from a highly-sophisticated and fraudulent paramour scheme -- a "sha zhu pan" or "pig butchering" scam -- that sought to, and ultimately did, steal from Plaintiff a sum greater

than Eight Million Dollars ($8,000,000.00).  "Sha zhu pan" is a Chinese phrase that is translated to English as "pig butchering" to describe the process in which the offender builds a relationship with the victim over months -- frequently romantic, in which the offender showers the victim with messages of love and affection to emotionally "fatten them up" -- similar to fattening a pig, before enticing the victim to invest in a fake company and, metaphorically, slaughtering the victim.  Plaintiff was victimized by such a scam.

After meeting online on popular dating service Tinder and communicating frequently via the multi-platform messaging app WhatsApp, Plaintiff and Defendant BULASA sparked and built what appeared to Plaintiff to be a deeply-held affection for, and interest in, one another.  As their relationship progressed and Plaintiff's trust in Defendant BULASA grew deeper, Defendant BULASA -- with false promises of romance and of financial prosperity through cryptocurrency investments -- induced from Plaintiff monetary transfers with financially devastating results.  In all, Defendant BULASA induced from Plaintiff monetary transfers in a total sum that exceeds Eight Million Dollars ($8,000,000.00).

To effectuate his scheme, Defendant BULASA enlisted Defendants DONG LIAN and DANYUN LIN to assist in receiving from Plaintiff fraudulently procured wire transfers to bank accounts Defendants LIAN and LIN maintained at TD BANK, N.A. and ABACUS FEDERAL SAVINGS BANK -- wire transfers that were ultimately placed under Defendant BULASA's control. Plaintiff, based on Defendant BULASA's representations and advice, wired Three Hundred Ninety-Six Dollars ($396,000.00) to bank accounts at TD BANK and ABACUS BANK purportedly maintained or controlled by Defendants DONG LIAN and DANYUN LIN -- who Defendant

SILVER MILLER
4450 NW 126th Avenue - Suite 101 • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

BULASA told Plaintiff were investors with whom he worked who already held cryptocurrency in accounts Defendant BULASA oversaw[1], thusly:

| Date of Wire Transfer | Bank | Bank Account to which Funds Were Wired | Payee | Amount Transferred |
|---|---|---|---|---|
| May 13, 2021 | TD Bank | ***8000 | Dong Lian | $10,000.00 |
| May 15, 2021 | Abacus Federal Savings Bank | ***0334 | Dong Lian | $86,000.00 |
| May 26, 2021 | Abacus Federal Savings Bank | ***0334 | Dong Lian | $100,000.00 |
| June 2, 2021 | TD Bank | ***2161 | Danyun Lin | $200,000.00 |
| | | TOTAL | | $396,000.00 |

In return for the funds wired to them, Defendant LIAN and Defendant LIN transferred to Plaintiff cryptocurrency, which she then forwarded to a cryptocurrency account controlled by Defendant BULASA so he could invest it in accordance with his purported cryptocurrency expertise. Under Defendant BULASA's guidance, Plaintiff also opened a cryptocurrency account at U.S.-based cryptocurrency exchange Coinbase which she funded with additional family monies that were used to purchase cryptocurrency that was subsequently transferred to cryptocurrency investment firm accounts operated by Defendant BULASA.

In addition to the May 2021 and early-June 2021 bank wire transfers to Defendant LIAN and Defendant LIN, Plaintiff funded her Coinbase account with approximately Six Million Dollars ($6,000,000.00); used those funds to purchase cryptocurrency, and then sent that cryptocurrency to an investment account allegedly created for Plaintiff that was overseen by Defendant BULASA. Plaintiff has since learned that the account into which Defendant BULASA purported to be storing

---

[1] Upon information and belief, Defendant BULASA, Defendant LIAN, and Defendant LIN might be the same person or, in the alternative, are three individuals who conspired with one another to perpetrate the fraud upon Plaintiff detailed herein.

SILVER MILLER
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Plaintiff's cryptocurrency is a fake cryptocurrency exchange that served as an engine of theft for Defendant BULASA -- providing him a mechanism to proffer Plaintiff false account statements and real-time values of cryptocurrency markets on legitimate exchanges that masked the fraudulent scheme Defendant BULASA was perpetrating upon Plaintiff.

While transferring to Defendant BULASA approximately Two Million Dollars ($2,000,000.00) more in fiat currency and cryptocurrency assets, Defendant BULASA provided Plaintiff a series of excuses alleging that obstacles beyond his control were encumbering Plaintiff's assets and preventing her from accessing those assets. In truth, those obstacles were devised by Defendant BULASA to obfuscate his activities and create both time and distance between himself and Plaintiff so he could abscond with her assets.

Through blockchain analytics tracing the path of Plaintiff's cryptocurrency assets, it has become apparent that Defendant BULASA has filtered through multiple cryptocurrency exchanges and wallets -- all without Plaintiff's knowledge or authorization -- nearly all if not all of the assets he stole from Plaintiff. Among the cryptocurrency exchange addresses/wallet addresses that have thus far been identified are the following:

| # | EXCHANGE | DESTINATION ADDRESS | ASSET TYPE | ASSETS UNDER CLAIM (average confirmed with five separate tracing methodologies; in cryptocurrency unit) |
|---|---|---|---|---|
| 1 | Binance | 9ea12866d4b69b347ffff084fc4bb3b97cc4d4b4 | USDT | 351,456.322587 |
| 2 | Binance | f52fb20441641e2c446c7db9c2ebee9b80611679 | USDT | 138,928.623847 |
| 3 | Binance | 1838f42bc8e28f0799e21501620e5a93dd32f107 | USDT | 126,574.190249 |
| 4 | Binance | 9c9ba31722261aced59373b53cf567ca96243f57 | USDT | 105,389.848449 |
| 5 | Binance | 2944f6937dcf1ef0b4a005619a35c2e4757bcee0 | USDT | 98,964.245785 |
| 6 | Binance | e42bee8902895f6f228e1b20e40a7d410ff508bf | USDT | 93,679.797809 |
| 7 | Binance | b22270560cdec8cf281ea6f87c14cb24037421be | USDT | 89,273.852767 |

SILVER MILLER
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

| 8 | Binance | e15ba3e0824f97f4b0f841cf030021097eaf2108 | USDT | 87,098.577482 |
| 9 | Binance | 497025d44131d4a261705368f8c1cf4b6025897a | USDT | 58,462.166853 |
| 10 | Binance | 7f90ef04ba3ed5b1f7908d8e0463a6975227d4f8 | USDT | 18,795.819565 |
| 11 | Binance | 1a2893432d0615a0764a311b5d2a6062dc212c9d | USDT | 18,717.887253 |
| 12 | Binance | 5e65b32ee4f6a63a0678a43f9439eb421457d950 | USDT | 13,903.728216 |
| 13 | Binance | 70fc0e221578f6d47f958cfa2bff1f9320bc6eec | USDT | 8,402.510102 |
| 14 | Binance | 430ddd14ad41c97dd09d8df94e00f3eb65b7c694 | USDT | 4,877.660928 |
| 15 | Binance | 44a11506b275dc619a1c5a20dc8969ea305c8dd7 | USDT | 4,391.864424 |
| 16 | Binance | 88dfbd93f509d0b3dcbfd86ee9d6d036ca199ea5 | USDT | 4,212.498994 |
| 17 | Binance | 1fe77c00c81e32c50494e2c73a1ce945dd7215a0 | USDT | 3,908.191703 |
| 18 | Binance | 7db77e4c967c95a5a9e2ec57ec21788dab481893 | USDT | 2,281.305709 |
| 19 | Binance | 6d6ab7dbc46ab652eaf4b09827e0de9cc18bc364 | USDT | 1,406.698380 |
| | | | TOTAL | 1,230,725.791102 USDT |

| 1 | Poloniex | 1ArN6zUiCYuyQVrujb5iMUvBXw7HxzYjPo | BTC | 10.11113414 |
| 2 | Poloniex | 14kahPazCQEyEwKmeR5JG8mZh66W9caQqe | BTC | 7.50000000 |
| 3 | Poloniex | 1LQ9Mrbvdv5QFe5Pdzw7sTxHexkpRoHmMN | BTC | 7.312601758 |
| 4 | Poloniex | 12XwnGBjU6Hp4ecVv61tRDSGdW3SXkt8CP | BTC | 6.920274378 |
| 5 | Poloniex | 1CCNdKHhqtdK4ZauZ7PWgFvDBpZ59MXjP2 | BTC | 6.11926921 |
| 6 | Poloniex | 17Z3S2pfJGQj6QH39j1UPfoGJJ2kqkWSem | BTC | 4.45347371 |
| 7 | Poloniex | 13mLXtUtSkvPqU8qAv81njLSwe4DAnCrPR | BTC | 2.976871542 |
| 8 | Poloniex | 1Ko5ntJvnGhUYfTmseFJxBuereCi6TFTfp | BTC | 0.51755494 |
| | | | TOTAL | 45.91117968 BTC[2] |

---

[2] As of the date of this filing, 45.91117968 BTC are valued at approximately $2,203,736.62 USD ($48,000.00 per BTC).

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

| # | CRYPTOCURRENCY WALLET ADDRESS | ASSET TYPE | ASSETS UNDER CLAIM (average confirmed with five separate tracing methodologies; in cryptocurrency unit) |
|---|---|---|---|
| 1 | 365aca59aeb17df6e3a76ec2bdbefe9983f586c5 | USDT | 210,075 |
| 2 | e71010a991fff28c221dfb2aca207c129ff9cf1b | USDT | 86,695.1041952 |
| 3 | 6cca6bde94ad75bfb1e21720677ae9c1f296f607 | USDT | 53,522 |
| 4 | cdce3f15ecb6da711700994fa7c838e45f107f24 | USDT | 49,354.6025112 |
| 5 | f7b7a705d7ac47452eaaff796601271bfc42c43a | USDT | 41,678.0702184 |
| 6 | 3b53e49200546344d7bb31a334e24421a3cb4451 | USDT | 22,359.9849322 |
| 7 | 98022e367dceb0a25317f0e68b949ad3bd7a3571 | USDT | 18,591.4968140 |
| 8 | 2dd59e945a3c036444e37f31d3b2f001d93eefb1 | USDT | 17,020.0423440 |
| 9 | 5fcad1e9ffdc4f207dfe7f0cfdb67d286b0b0162 | USDT | 16,282.1040658 |
| 10 | 7d65a55862aa569f96e31e50c4e6def0b34f05ed | USDT | 7,403.3527816 |
| 11 | 6af4eba5f8b339512960ebef11e02815c42b8c00 | USDT | 5,352.8389960 |
| 12 | 4d27a8e567e4f7b51d1a07ff0cc032d78b0d43d0 | USDT | 3,141.6391760 |
| 13 | 3cb3c884b033fc0dd22c2c8439edd9eeece8818c | USDT | 1,690.8607544 |
| 14 | 12a2dfcac61118e26197ed1a581099faf4dc16e2 | USDT | 655.0425430 |
| 15 | a21675225d76975635cea38b70e874f0a685bf1d | USDT | 414.5838890 |
| 16 | e01d86cf1fa41d6d5d685b3c13555c79fc3aa798 | USDT | 15.9851010 |
| 17 | 5ea54787b09bc81c191a4037f36313d82e407a64 | USDT | 6.3173528 |
| 18 | a2193eb903a185ae3afd05ef461687a221e04adb | USDT | 4.4477338 |
| 19 | 3e362670c657b6e45e792510cd57980466f09194 | USDT | 0.1941922 |
| | | TOTAL | 534,263.6676006 USDT |

As a result of the foregoing scheme, Plaintiff has lost over $8,000,000.00 and is left trying to get answers from Defendant BULASA, Defendant LIAN, and Defendant LIN; who are unwilling to help Plaintiff uncover where her funds are or where they went after they left Plaintiff's control.

Given these facts, Plaintiff commenced this action and is entitled to a Temporary Restraining Order freezing Defendant BULASA's assets -- including any cryptocurrency exchange accounts

SILVER MILLER
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

owned or controlled by Defendant BULASA that are tied to the BINANCE Destination Addresses, the POLONIEX Destination Addresses, and any Cryptocurrency Wallet Addresses maintained by Defendant BULASA, for him, or by any entity under his control -- to preserve the *status quo ante* pending the outcome of this litigation.

## LEGAL ARGUMENT

### I.  Rule 65 Permits Entry of a Temporary Restraining Order Without Notice

1.      Rule 65 permits this Court to enter a Temporary Restraining Order without notice to the adverse parties if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury . . . will result to the movant before the adverse party can be heard in opposition."[3]  Further, the movant's counsel must certify in writing "any efforts made to give notice and the reasons why it should not be required."[4]

2.      As to the first prong of Rule 65(b)(1), the sworn Declaration Plaintiff has filed in support hereof shows the likelihood of immediate and irreparable injury or loss.  Plaintiff was clearly defrauded and robbed by Defendant BULASA; and the stone wall of obfuscation that has been erected by anonymous nature of cryptocurrency transactions significantly inhibits Plaintiff's ability to trace her stolen funds or even identify Defendant BULASA by his proper legal name at this point.

3.      By freezing Defendant BULASA's assets -- including any accounts at BINANCE and POLONIEX and any secondary cryptocurrency addresses to which Defendant BULASA transferred any portion of the funds stolen from Plaintiff -- Plaintiff will have a foothold in her arduous climb to recovering her stolen money before Defendant BULASA can further transfer it beyond Plaintiff's reach.

---

[3] Fed.R.Civ.P. 65(b)(1)(A).

[4] Fed.R.Civ.P. 65(b)(1)(B).  *See also*, *Mesa v. Wells Fargo Bank, N.A.*, 2017 WL 9285517 at *1 (E.D. Tex. Sept. 1, 2017).

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

4.      With regard to the second prong of Rule 65(b)(1), a TRO is warranted without notice to Defendant BULASA. Defendant BULASA's proper legal name is unknown at this point, and only through expedited discovery to Defendants TD BANK, ABACUS BANK, BINANCE, and POLONIEX (the subject of a motion filed simultaneously herewith) might Plaintiff be able to uncover Defendant BULASA's name and a location -- either physical or electronic -- at which he can be apprised of the charges brought against him in this lawsuit so he may defend himself against those charges, if he so chooses.

## II.    The Court Can Issue an Injunction to Freeze Assets in this Action for Equitable Relief

5.      Under the general rule, federal courts lack the authority to freeze assets of a defendant before the claims have been brought to judgment. *See, Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999). However, when the plaintiff is seeking equitable relief, as opposed to merely legal damages, a district court may order a preliminary injunction to secure an equitable remedy and "an asset freeze by preliminary injunction is an appropriate method to assure the meaningful, final equitable relief sought." *Federal Sav. & Loan Ins. Corp. v. Dixon,* 835 F.2d 554, 561 (5th Cir. 1987). In *Dixon*, the Fifth Circuit specifically noted that "once a plaintiff establishes an equitable cause of action, the district court may use its full equitable powers to grant appropriate preliminary relief as well." *Id.* At 562.

6.      Moreover, Rule 64 of the Federal Rules of Civil Procedure provides that when state law authorizes a prejudgment remedy to secure assets subject to a plaintiff's state law claims, state law governs such relief. Rule 64, Fed.R.Civ.P.; *Granny Goose Foods, Inc. v. Bhd. of Teamsters Local 70*, 415 U.S. 423, 436 n. 10 (1974).

7.      Here, Plaintiff seeks equitable relief in addition to her legal remedies and is entitled to an injunction to maintain the *status quo* until the claims in the Complaint can be resolved. Amongst other claims and remedies sought, Plaintiff alleges violations of numerous common law torts

(fraudulent inducement, negligent misrepresentations, conversion, and civil conspiracy) and requests relief in the following form of equity:

- An Order imposing **a constructive trust** to be effectuated by Defendant TD BANK AND ABACUS BANK and full disgorgement of all funds in TD BANK's and ABACUS BANK's possession, custody, or control that were wrongfully misappropriated, converted, and stolen from Plaintiff.

- the equitable imposition of a constructive trust over the property taken from Plaintiff that is currently held by Defendant BULASA, an individual, in any cryptocurrency exchange accounts owned or controlled by Defendant BULASA that are tied to the BINANCE Destination Addresses, the POLONIEX Destination Addresses, and any Cryptocurrency Wallet Addresses maintained by Defendant BULASA, for him, or by any entity under his control; and [entry of an Order] that the wrongfully obtained property be restored to Plaintiff.

8.     Additionally, with regard to the claim for imposition of a constructive trust, Texas courts have authorized equitable injunctive relief to secure the assets subject to the claim. *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 210 (Tex. App. 2014)

9.     Accordingly, Plaintiff is entitled to a Temporary Restraining Order if the other requirements for a Temporary Restraining Order have been met. For the reasons described below, Plaintiff is entitled to such relief.

### III.     A Temporary Restraining Order Is Appropriate to Prevent Immediate and Irreparable Harm

10.     The standard for issuing a Temporary Restraining Order is identical to the standard for issuing a preliminary injunction. See *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). In considering a Temporary Restraining Order or preliminary injunction, the Court must consider the following: (1) the substantial likelihood that the plaintiff will prevail on the merits; (2) a substantial threat that irreparable harm will result if the injunction is not granted; (3) whether the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest." *Id.* At 993. As shown below, Plaintiff satisfies each element of that standard.

**SILVER MILLER**
4450 NW 126th Avenue - Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

**IV.**     **Plaintiff Has a Substantial Likelihood of Success on the Merits of Her Claims**

11.     The harms alleged in the Complaint, as well as the facts set forth in the declaration executed by Plaintiff, make clear that Plaintiff was victimized by Defendant BULASA, Defendant LIAN, and Defendant LIN who – through actual fraud, misappropriation, conversion, theft, or other questionable means -- obtained Plaintiff's cryptocurrency and fiat currency, which in equity and good conscience they should not be permitted to hold.

12.     Based on that fraudulent behavior, Plaintiff has asserted claims for: (1) fraudulent inducement, (2) negligent misrepresentation, (3) conversion, and (4) civil conspiracy.

13.     Moreover, any and all monies being held by TD BANK and ABACUS BANK must be held in a constructive trust for Plaintiff's benefit, as neither Defendant BULASA nor Defendant LIAN or Defendant LIN is entitled to the benefit of wrongfully misappropriated, converted, and stolen funds and cryptocurrency assets that were taken from Plaintiff.

14.     Further, any and all cryptocurrency assets held in any cryptocurrency exchange accounts owned or controlled by Defendant BULASA that are tied to the BINANCE Destination Addresses, the POLONIEX Destination Addresses, and any Cryptocurrency Wallet Addresses maintained by Defendant BULASA, for him, or by any entity under his control to which Defendant BULASA transferred any portion of the funds stolen from Plaintiff must be held in a constructive trust for Plaintiff's benefit, as Defendant BULASA is not entitled to the benefit of wrongfully misappropriated, converted, and stolen funds and cryptocurrency assets that were taken from Plaintiff.

15.     In light of the foregoing, there is a high likelihood Plaintiff will succeed on her claims.

16.     As for Plaintiff's request that a constructive trust be applied, Texas law provides that a constructive trust is "an equitable remedy created by the courts to prevent unjust enrichment." *Troxel v. Bishop*, 201 S.W.3d 290, 297 (Tex.App.-Dallas 2006).  To impose a constructive trust, the proponent

- 10 -

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

must prove the following: (1) breach of a special trust, fiduciary relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res. *Id.*

17.     As explained above, Defendant BULASA solicited and/or accepted from Plaintiff large sums of funds while withholding from Plaintiff certain material facts that, if disclosed, would have prevented the fraudulent scheme enacted by Defendant BULASA, Defendant LIAN, and Defendant LIN from perpetuating itself to the detriment of Plaintiff.  Plaintiff submits that actual fraud, abuse of confidence reposed and accepted, and other highly questionable means were employed by these defendants; and equity and good conscience should not permit Defendant BULASA, Defendant LIAN, and Defendant LIN to continue holding the spoils of their scheme.

18.     Moreover, through blockchain analytics following the path of Plaintiff's stolen cryptocurrency assets, one can trace the stolen assets to an identifiable res.

19.     As such, success on the merits of Plaintiff's common law claims is very likely.

**V.     Plaintiff Will Suffer Irreparable Harm if Defendant Bulasa Is Not Enjoined**

20.     There is a significant risk that  Defendant BULASA may dissipate the money stolen from Plaintiff or simply transfer those funds into untraceable cryptocurrency accounts or to offshore entities organized in unknown locations.

21.     Considering the unreliability and past fraudulent tactics Defendant BULASA has displayed, it is imperative to freeze Defendant BULASA's assets, including any cryptocurrency exchange accounts owned or controlled by Defendant BULASA that are tied to the BINANCE Destination Addresses, the POLONIEX Destination Addresses, and any Cryptocurrency Wallet Addresses maintained by Defendant BULASA, for him, or by any entity under his control, to maintain the *status quo* to avoid dissipation of the money illegally taken from Plaintiff.

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

22.     Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze Defendant BULASA's assets to maintain the *status quo* to avoid dissipation of the money illegally taken from Plaintiff.

23.     In fact, Plaintiff has already discovered through cryptographic tracing that the following assets have been transferred by Defendant BULASA or someone believed to be acting at his behest as recently as the date of filing this motion:

|   | EXCHANGE | DESTINATION ADDRESS | ASSET TYPE | ASSETS UNDER CLAIM (average confirmed with five separate tracing methodologies; in cryptocurrency unit) |
|---|---|---|---|---|
| 1 | Binance | 9ea12866d4b69b347ffff084fc4bb3b97cc4d4b4 | USDT | 351,456.322587 |
| 2 | Binance | f52fb20441641e2c446c7db9c2ebee9b80611679 | USDT | 138,928.623847 |
| 3 | Binance | 1838f42bc8e28f0799e21501620e5a93dd32f107 | USDT | 126,574.190249 |
| 4 | Binance | 9c9ba31722261aced59373b53cf567ca96243f57 | USDT | 105,389.848449 |
| 5 | Binance | 2944f6937dcf1ef0b4a005619a35c2e4757bcee0 | USDT | 98,964.245785 |
| 6 | Binance | e42bee8902895f6f228e1b20e40a7d410ff508bf | USDT | 93,679.797809 |
| 7 | Binance | b22270560cdec8cf281ea6f87c14cb24037421be | USDT | 89,273.852767 |
| 8 | Binance | e15ba3e0824f97f4b0f841cf030021097eaf2108 | USDT | 87,098.577482 |
| 9 | Binance | 497025d44131d4a261705368f8c1cf4b6025897a | USDT | 58,462.166853 |
| 10 | Binance | 7f90ef04ba3ed5b1f7908d8e0463a6975227d4f8 | USDT | 18,795.819565 |
| 11 | Binance | 1a2893432d0615a0764a311b5d2a6062dc212c9d | USDT | 18,717.887253 |
| 12 | Binance | 5e65b32ee4f6a63a0678a43f9439eb421457d950 | USDT | 13,903.728216 |
| 13 | Binance | 70fc0e221578f6d47f958cfa2bff1f9320bc6eec | USDT | 8,402.510102 |
| 14 | Binance | 430ddd14ad41c97dd09d8df94e00f3eb65b7c694 | USDT | 4,877.660928 |
| 15 | Binance | 44a11506b275dc619a1c5a20dc8969ea305c8dd7 | USDT | 4,391.864424 |
| 16 | Binance | 88dfbd93f509d0b3dcbfd86ee9d6d036ca199ea5 | USDT | 4,212.498994 |
| 17 | Binance | 1fe77c00c81e32c50494e2c73a1ce945dd7215a0 | USDT | 3,908.191703 |
| 18 | Binance | 7db77e4c967c95a5a9e2ec57ec21788dab481893 | USDT | 2,281.305709 |
| 19 | Binance | 6d6ab7dbc46ab652eaf4b09827e0de9cc18bc364 | USDT | 1,406.698380 |
|   |   |   | TOTAL | 1,230,725.791102 USDT |

| 1 | Poloniex | 1ArN6zUiCYuyQVrujb5iMUvBXw7HxzYjPo | BTC | 10.11113414 |
|---|---|---|---|---|
| 2 | Poloniex | 14kahPazCQEyEwKmeR5JG8mZh66W9caQqe | BTC | 7.50000000 |
| 3 | Poloniex | 1LQ9Mrbvdv5QFe5Pdzw7sTxHexkpRoHmMN | BTC | 7.312601758 |
| 4 | Poloniex | 12XwnGBjU6Hp4ecVv61tRDSGdW3SXkt8CP | BTC | 6.920274378 |
| 5 | Poloniex | 1CCNdKHhqtdK4ZauZ7PWgFvDBpZ59MXjP2 | BTC | 6.11926921 |
| 6 | Poloniex | 17Z3S2pfJGQj6QH39j1UPfoGJJ2kqkWSem | BTC | 4.45347371 |
| 7 | Poloniex | 13mLXtUtSkvPqU8qAv81njLSwe4DAnCrPR | BTC | 2.976871542 |
| 8 | Poloniex | 1Ko5ntJvnGhUYfTmseFJxBuereCi6TFTfp | BTC | 0.51755494 |
| | | | TOTAL | 45.91117968 BTC[5] |

| # | CRYPTOCURRENCY WALLET ADDRESS | ASSET TYPE | ASSETS UNDER CLAIM (average confirmed with five separate tracing methodologies; in cryptocurrency unit) |
|---|---|---|---|
| 1 | 365aca59aeb17df6e3a76ec2bdbefe9983f586c5 | USDT | 210,075 |
| 2 | e71010a991fff28c221dfb2aca207c129ff9cf1b | USDT | 86,695.1041952 |
| 3 | 6cca6bde94ad75bfb1e21720677ae9c1f296f607 | USDT | 53,522 |
| 4 | cdce3f15ecb6da711700994fa7c838e45f107f24 | USDT | 49,354.6025112 |
| 5 | f7b7a705d7ac47452eaaff796601271bfc42c43a | USDT | 41,678.0702184 |
| 6 | 3b53e49200546344d7bb31a334e24421a3cb4451 | USDT | 22,359.9849322 |
| 7 | 98022e367dceb0a25317f0e68b949ad3bd7a3571 | USDT | 18,591.4968140 |
| 8 | 2dd59e945a3c036444e37f31d3b2f001d93eefb1 | USDT | 17,020.0423440 |
| 9 | 5fcad1e9ffdc4f207dfe7f0cfdb67d286b0b0162 | USDT | 16,282.1040658 |
| 10 | 7d65a55862aa569f96e31e50c4e6def0b34f05ed | USDT | 7,403.3527816 |
| 11 | 6af4eba5f8b339512960ebef11e02815c42b8c00 | USDT | 5,352.8389960 |
| 12 | 4d27a8e567e4f7b51d1a07ff0cc032d78b0d43d0 | USDT | 3,141.6391760 |
| 13 | 3cb3c884b033fc0dd22c2c8439edd9eeece8818c | USDT | 1,690.8607544 |
| 14 | 12a2dfcac61118e26197ed1a581099faf4dc16e2 | USDT | 655.0425430 |
| 15 | a21675225d76975635cea38b70e874f0a685bf1d | USDT | 414.5838890 |
| 16 | e01d86cf1fa41d6d5d685b3c13555c79fc3aa798 | USDT | 15.9851010 |

---

[5] As of the date of this filing, 45.91117968 BTC are valued at approximately $2,203,736.62 USD ($48,000.00 per BTC).

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

| 17 | 5ea54787b09bc81c191a4037f36313d82e407a64 | USDT | 6.3173528 |
| 18 | a2193eb903a185ae3afd05ef461687a221e04adb | USDT | 4.4477338 |
| 19 | 3e362670c657b6e45e792510cd57980466f09194 | USDT | 0.1941922 |
| | | TOTAL | 534,263.6676006 USDT |

The large number of cryptocurrency addresses further emphasizes the ease with which Defendant BULASA is transferring Plaintiff's stolen assets and the difficulty with which Plaintiff is faced in tracking down her stolen assets.

**VI.    There Is Little Prejudice to Defendant Bulasa If the Temporary Restraining Order Is Entered**

25.    While Plaintiff would be severely prejudiced if Defendant BULASA dissipates the funds wrongfully taken from Plaintiff, Defendant BULASA faces no such prejudice.  An order forbidding Defendant BULASA from moving his assets will, at worst, delay Defendant BULASA from shifting his purloined funds to an untraceable cryptocurrency accounts; and at best, will help maintain the *status quo* for Plaintiff to recover the millions of dollars illegally obtained through Defendants' fraudulent scheme.

**VII.    Plaintiff Has No Adequate Remedy at Law**

26.    Plaintiff's only remedy to recover the funds fraudulently taken from her is through her right to equitable relief in the form of an injunction to asset dissipation by Defendant BULASA, beginning with imposition of a restraining order to prevent the dissipation of Plaintiff's assets.  A legal remedy for monetary relief alone will not adequately protect Plaintiff's equitable ownership interest in those funds and assets that can disappear with the click of a computer mouse.

**VIII.    Entering a Temporary Restraining Order Is In the Public Interest**

27.    The public interest strongly supports entry of a temporary restraining order here.

28.    Moreover, entering a temporary restraining order would serve the public interest by promoting the objectives of the Financial Crimes Enforcement Network [FinCEN] (a division of the

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

U.S. Department of the Treasury) by providing assurance that courts will protect investors' assets from theft and will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like the purloined investor assets in this action.

## **CONCLUSION**

For the foregoing reasons, Plaintiff DIVYA GADASALLI, respectfully requests that this Court find that Plaintiff has satisfied the elements of her claim for preliminary injunctive relief and that the Court enter a Temporary Restraining Order without notice to Defendant BULASA, freezing his assets -- including any cryptocurrency exchange accounts owned or controlled by Defendant BULASA that are tied to the BINANCE Destination Addresses, the POLONIEX Destination Addresses, and any Cryptocurrency Wallet Addresses maintained by Defendant BULASA, for him, or by any entity under his control to which Defendant BULASA transferred any portion of the funds stolen from Plaintiff -- to preserve the *status quo ante* pending the full adjudication of Plaintiffs' claims.

Respectfully submitted,

**SILVER MILLER**
4450 NW 126th Avenue - Suite 101
Coral Springs, Florida 33065
Telephone:       (954) 516-6000

By: _____
        DAVID C. SILVER
        Florida Bar No. 572764
        E-mail: DSilver@SilverMillerLaw.com

        *Counsel for Plaintiff*

Dated: March ___28___, 2022

- 15 -

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Texas

| | |
|---|---|
| DIVYA GADASALLI, an individual | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No.  4:22-cv-00249 |
| JERRY BULASA, an individual; | ) |
| DONG LIAN, an individual; | ) |
| DANYUN LIN, an individual; | ) |
| TD BANK, N.A., a national banking association; etc. | ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  JERRY BULASA
841 56th Street - 1st Floor
Brooklyn, NY 11220

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    David C. Silver, Esq.
Silver Miller
4450 NW 126th Ave. - Suite 101
Coral Springs, FL 33065
E-mail: DSilver@SilverMillerLaw.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: ___ **3/29/22** ___                                    *David A. O'Toole*

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  4:22-cv-00249

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| DIVYA GADASALLI, | § | |
| | § | |
| *Plaintiff,* | § | Civil Action No. 4:22-cv-249 |
| | § | Judge Mazzant |
| v. | § | |
| | § | |
| JERRY BULASA, ET AL., | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## <u>ORDER</u>

Pending before the Court is Plaintiff Divya Gadasalli's Emergency Motion for Temporary Restraining Order Without Notice Against Defendant Jerry Bulasa (Dkt. #2). Having reviewed the motion and relevant pleadings, the Court finds that the motion should be **DENIED**.

There are four prerequisites for the extraordinary relief of preliminary injunction or temporary restraining order under Rule 65 of the Federal Rules of Civil Procedure: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted. *Miss. Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985).

Rule 65 also allows the Court to issue a temporary restraining order without notice to the adverse party if both of the following requirements are met:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse

party can be heard in opposition; and
(B) the movant's attorney certifies in writing any efforts made to give notice and
the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1)(A)-(B).  Gadasalli's motion fails under the second prong, as her counsel failed to certify in writing any efforts made to give notice to Defendant Jerry Bulasa ("Bulasa") of this motion.

The motion for TRO merely states, "a TRO is warranted without notice to [Bulasa]" because "Bulasa's legal name is unknown" (Dkt. #2 ¶ 4).  Essentially, counsel has given the Court an excuse for why it failed to even try reaching Bulasa, which does not satisfy Rule 65(b)'s requirements.  *See 6th St. Bus. Partners LLC v. Abbott*, No. 1:20-cv-706-RP, 2020 WL 8125634, at *1 (W.D. Tex. July 9, 2020) (finding insufficient plaintiff's assertion that he was "in the process of serving summons on Defendant"); *see also Burris v. Van Slyke*, No. 1:19-cv-160-mac, 2019 WL 1940635, at *2 (E.D. Tex. April 10, 2019) (noting plaintiff failed to satisfy the requirements for a TRO without notice where plaintiff did not certify in an affidavit or verified complaint that any effort was made to put defendant on notice of the motion for TRO).  Thus, Gadasalli has failed to follow the Federal Rules, and the Court will not consider the application on its merits.

It is therefore **ORDERED** Plaintiff Divya Gadasalli's Emergency Motion for Temporary Restraining Order Without Notice Against Defendant Jerry Bulasa (Dkt. #2) is hereby **DENIED without prejudice**.

**IT IS SO ORDERED.**
**SIGNED this 30th day of March, 2022.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

2