# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS

**Civil Action No. 4:22-cv-00249-ALM**

DIVYA GADASALLI, an individual,

    Plaintiff,

v.

JERRY BULASA, an individual;
DONG LIAN, an individual; DANYUN LIN, an individual;
TD BANK, N.A., a national banking association;
ABACUS FEDERAL SAVINGS BANK, a federal savings bank;
BINANCE HOLDINGS, LTD. d/b/a Binance, a foreign company; and
POLONIEX, LLC, a Delaware limited liability company;

    Defendants.

_____/

## TEMPORARY RESTRAINING ORDER

This matter is before the Court on Plaintiff's Renewed Emergency Motion for Temporary Restraining Order Without Notice against Defendant JERRY BULASA, an individual (the "Motion"). [Docket Entry No. ("DE") 11]. Under Federal Rule of Civil Procedure 65, a Court may grant a Temporary Restraining Order *ex parte*. As required by the Rule, specific facts in the form of an affidavit or Verified Complaint must demonstrate an "immediate and irreparable injury, loss, or damage will result to movant before the adverse party can be heard in opposition," and the attorney for the movant must certify in writing any efforts made to provide notice to the adverse party. *See*, Fed.R.Civ.P. 65(b)(1). Any Order issued without notice to the adverse party must state "the date and hour it was issued; describe the injury and state why it is irreparable; state why the Order was issued without notice and be promptly filed in the Clerk's Office and entered in the record. The Order expires at a time after entry -- not to exceed fourteen (14) days." *Id.* at (b)(2).

In considering a Temporary Restraining Order, the Court must evaluate the following: (1) the substantial likelihood that the plaintiff will prevail on the merits; (2) a substantial threat that irreparable

Temporary Restraining Order<br>Civil Action No. 4:22-cv-00249-ALM

harm will result if the injunction is not granted; (3) whether the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest." *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). Having reviewed the Motion, the file, and being otherwise sufficiently advised in the premises, the Court hereby finds as follows:

1. Plaintiff DIVYA GADASALLI ("Plaintiff") has shown a strong likelihood of success on the merits of her claims against Defendant JERRY BULASA ("Defendant BULASA") for: (1) fraudulent inducement, (2) negligent misrepresentation, (3) conversion, and (4) civil conspiracy.

2. As demonstrated by Plaintiff in her Complaint [DE 1] and verified by her Declaration in support of the Motion [DE 2-2], Defendant BULASA induced from Plaintiff monetary transfers in a total sum that exceeds Eight Million Dollars ($8,000,000.00).

3. According to Plaintiff, based on Defendant BULASA's representations and advice, she wired Three Hundred Ninety-Six Dollars ($396,000.00) to bank accounts at TD BANK and ABACUS BANK purportedly maintained or controlled by Defendants DONG LIAN and DANYUN LIN -- who Defendant BULASA told Plaintiff were investors with whom he worked who already held cryptocurrency in accounts Defendant BULASA oversaw[1], thusly:

| DATE OF WIRE TRANSFER | BANK | BANK ACCOUNT TO WHICH FUNDS WERE WIRED | PAYEE | AMOUNT TRANSFERRED |
|---|---|---|---|---|
| May 13, 2021 | TD Bank | ***8000 | Dong Lian | $10,000.00 |
| May 15, 2021 | Abacus Federal Savings Bank | ***0334 | Dong Lian | $86,000.00 |
| May 26, 2021 | Abacus Federal Savings Bank | ***0334 | Dong Lian | $100,000.00 |
| June 2, 2021 | TD Bank | ***2161 | Danyun Lin | $200,000.00 |
| | | TOTAL | | $396,000.00 |

---

[1] It is unclear at this time whether Defendant BULASA, Defendant LIAN, and Defendant LIN are all the same person or are three separate individuals. Discovery will be undertaken to explore that issue.

4. In return for the funds wired to them, Defendant LIAN and Defendant LIN transferred to Plaintiff cryptocurrency, which she then forwarded to a cryptocurrency account controlled by Defendant BULASA so he could invest it in accordance with his purported cryptocurrency expertise.

5. Under Defendant BULASA's guidance, Plaintiff also opened a cryptocurrency account at U.S.-based cryptocurrency exchange Coinbase which she funded with additional family monies that were used to purchase cryptocurrency that was subsequently transferred to cryptocurrency investment firm accounts operated by Defendant BULASA.

6. In addition to the May 2021 and early-June 2021 bank wire transfers to Defendant LIAN and Defendant LIN, Plaintiff funded her Coinbase account with approximately Six Million Dollars ($6,000,000.00); used those funds to purchase cryptocurrency, and then sent that cryptocurrency to an investment account allegedly created for Plaintiff that was overseen by Defendant BULASA.

7. Plaintiff has alleged that she has since learned that the account into which Defendant BULASA purported to be storing Plaintiff's cryptocurrency is a fake cryptocurrency exchange that served as an engine of theft for Defendant BULASA -- providing him a mechanism to proffer Plaintiff false account statements and real-time values of cryptocurrency markets on legitimate exchanges that masked the fraudulent scheme Defendant BULASA was perpetrating upon Plaintiff.

8. Plaintiff has further alleged that while transferring to Defendant BULASA approximately Two Million Dollars ($2,000,000.00) more in fiat currency and cryptocurrency assets, Defendant BULASA provided Plaintiff a series of excuses alleging that obstacles beyond his control were encumbering Plaintiff's assets and preventing her from accessing those assets -- obstacles which Plaintiff assets were devised by Defendant BULASA to obfuscate his activities and create both time and distance between himself and Plaintiff so he could abscond with her assets.

Temporary Restraining Order
Civil Action No. 4:22-cv-00249-ALM

9. Through blockchain analytics tracing the path of Plaintiff's cryptocurrency assets, Plaintiff alleges it has become apparent that Defendant BULASA has filtered through multiple cryptocurrency exchanges and wallets -- all without Plaintiff's knowledge or authorization -- nearly all if not all of the assets he stole from Plaintiff. Among the cryptocurrency exchange addresses/wallet addresses that have thus far been identified by Plaintiff are the following:

| # | EXCHANGE | DESTINATION ADDRESS | ASSET TYPE | ASSETS UNDER CLAIM (average confirmed with five separate tracing methodologies; in cryptocurrency unit) |
|---|---|---|---|---|
| 1 | Binance | 9ea12866d4b69b347ffff084fc4bb3b97cc4d4b4 | USDT | 351,456.322587 |
| 2 | Binance | f52fb20441641e2c446c7db9c2ebee9b80611679 | USDT | 138,928.623847 |
| 3 | Binance | 1838f42bc8e28f0799e21501620e5a93dd32f107 | USDT | 126,574.190249 |
| 4 | Binance | 9c9ba31722261aced59373b53cf567ca96243f57 | USDT | 105,389.848449 |
| 5 | Binance | 2944f6937dcf1ef0b4a005619a35c2e4757bcee0 | USDT | 98,964.245785 |
| 6 | Binance | e42bee8902895f6f228e1b20e40a7d410ff508bf | USDT | 93,679.797809 |
| 7 | Binance | b22270560cdec8cf281ea6f87c14cb24037421be | USDT | 89,273.852767 |
| 8 | Binance | e15ba3e0824f97f4b0f841cf030021097eaf2108 | USDT | 87,098.577482 |
| 9 | Binance | 497025d44131d4a261705368f8c1cf4b6025897a | USDT | 58,462.166853 |
| 10 | Binance | 7f90ef04ba3ed5b1f7908d8e0463a6975227d4f8 | USDT | 18,795.819565 |
| 11 | Binance | 1a2893432d0615a0764a311b5d2a6062dc212c9d | USDT | 18,717.887253 |
| 12 | Binance | 5e65b32ee4f6a63a0678a43f9439eb421457d950 | USDT | 13,903.728216 |
| 13 | Binance | 70fc0e221578f6d47f958cfa2bff1f9320bc6eec | USDT | 8,402.510102 |
| 14 | Binance | 430ddd14ad41c97dd09d8df94e00f3eb65b7c694 | USDT | 4,877.660928 |
| 15 | Binance | 44a11506b275dc619a1c5a20dc8969ea305c8dd7 | USDT | 4,391.864424 |
| 16 | Binance | 88dfbd93f509d0b3dcbfd86ee9d6d036ca199ea5 | USDT | 4,212.498994 |
| 17 | Binance | 1fe77c00c81e32c50494e2c73a1ce945dd7215a0 | USDT | 3,908.191703 |
| 18 | Binance | 7db77e4c967c95a5a9e2ec57ec21788dab481893 | USDT | 2,281.305709 |
| 19 | Binance | 6d6ab7dbc46ab652eaf4b09827e0de9cc18bc364 | USDT | 1,406.698380 |
| | | | TOTAL | 1,230,725.791102 USDT |

| 1 | Poloniex | 1ArN6zUiCYuyQVrujb5iMUvBXw7HxzYjPo | BTC | 10.11113414 |
|---|---|---|---|---|
| 2 | Poloniex | 14kahPazCQEyEwKmeR5JG8mZh66W9caQqe | BTC | 7.50000000 |
| 3 | Poloniex | 1LQ9Mrbvdv5QFe5Pdzw7sTxHexkpRoHmMN | BTC | 7.312601758 |
| 4 | Poloniex | 12XwnGBjU6Hp4ecVv61tRDSGdW3SXkt8CP | BTC | 6.920274378 |
| 5 | Poloniex | 1CCNdKHhqtdK4ZauZ7PWgFvDBpZ59MXjP2 | BTC | 6.11926921 |
| 6 | Poloniex | 17Z3S2pfJGQj6QH39j1UPfoGJJ2kqkWSem | BTC | 4.45347371 |
| 7 | Poloniex | 13mLXtUtSkvPqU8qAv81njLSwe4DAnCrPR | BTC | 2.976871542 |
| 8 | Poloniex | 1Ko5ntJvnGhUYfTmseFJxBuereCi6TFTfp | BTC | 0.51755494 |
| | | | TOTAL | 45.91117968 BTC[2] |

| # | CRYPTOCURRENCY WALLET ADDRESS | ASSET TYPE | ASSETS UNDER CLAIM (average confirmed with five separate tracing methodologies; in cryptocurrency unit) |
|---|---|---|---|
| 1 | 365aca59aeb17df6e3a76ec2bdbefe9983f586c5 | USDT | 210,075 |
| 2 | e71010a991fff28c221dfb2aca207c129ff9cf1b | USDT | 86,695.1041952 |
| 3 | 6cca6bde94ad75bfb1e21720677ae9c1f296f607 | USDT | 53,522 |
| 4 | cdce3f15ecb6da711700994fa7c838e45f107f24 | USDT | 49,354.6025112 |
| 5 | f7b7a705d7ac47452eaaff796601271bfc42c43a | USDT | 41,678.0702184 |
| 6 | 3b53e49200546344d7bb31a334e24421a3cb4451 | USDT | 22,359.9849322 |
| 7 | 98022e367dceb0a25317f0e68b949ad3bd7a3571 | USDT | 18,591.4968140 |
| 8 | 2dd59e945a3c036444e37f31d3b2f001d93eefb1 | USDT | 17,020.0423440 |
| 9 | 5fcad1e9ffdc4f207dfe7f0cfdb67d286b0b0162 | USDT | 16,282.1040658 |
| 10 | 7d65a55862aa569f96e31e50c4e6def0b34f05ed | USDT | 7,403.3527816 |
| 11 | 6af4eba5f8b339512960ebef11e02815c42b8c00 | USDT | 5,352.8389960 |
| 12 | 4d27a8e567e4f7b51d1a07ff0cc032d78b0d43d0 | USDT | 3,141.6391760 |
| 13 | 3cb3c884b033fc0dd22c2c8439edd9eeece8818c | USDT | 1,690.8607544 |
| 14 | 12a2dfcac61118e26197ed1a581099faf4dc16e2 | USDT | 655.0425430 |

---

[2] As of the date of this filing, 45.91117968 BTC are valued at approximately $2,203,736.62 USD ($48,000.00 per BTC).

| 15 | a21675225d76975635cea38b70e874f0a685bf1d | USDT | 414.5838890 |
|----|---|---|---|
| 16 | e01d86cf1fa41d6d5d685b3c13555c79fc3aa798 | USDT | 15.9851010 |
| 17 | 5ea54787b09bc81c191a4037f36313d82e407a64 | USDT | 6.3173528 |
| 18 | a2193eb903a185ae3afd05ef461687a221e04adb | USDT | 4.4477338 |
| 19 | 3e362670c657b6e45e792510cd57980466f09194 | USDT | 0.1941922 |
|    |    | TOTAL | 534,263.6676006 USDT |

10. The cryptocurrency assets at issue are specific, identifiable property and can be traced in Defendant BULASA's assets in either the BINANCE Destination Addresses, the POLONIEX Destination Addresses, and any Cryptocurrency Wallet Addresses maintained by Defendant BULASA, for him, or by any person or entity working with him or under his control.

11. Here, in addition to her legal remedies Plaintiff seeks equitable relief a to maintain the *status quo* until the claims in the Complaint can be resolved. Amongst other claims and remedies sought, Plaintiff alleges violations of numerous common law torts (fraudulent inducement, negligent misrepresentations, conversion, and civil conspiracy) and requests relief in the following form of equity:

- An Order imposing **a constructive trust** to be effectuated by Defendant TD BANK AND ABACUS BANK and full disgorgement of all funds in TD BANK's and ABACUS BANK's possession, custody, or control that were wrongfully misappropriated, converted, and stolen from Plaintiff.

- the equitable imposition of a constructive trust over the property taken from Plaintiff that is currently held by Defendant BULASA, an individual, in any cryptocurrency exchange accounts owned or controlled by Defendant BULASA that are tied to the BINANCE Destination Addresses, the POLONIEX Destination Addresses, and any Cryptocurrency Wallet Addresses maintained by Defendant BULASA, for him, or by any person or entity working with him or under his control; and [entry of an Order] that the wrongfully obtained property be restored to Plaintiff.

12. Plaintiff has established in her Motion and the Declaration in support thereof that her rights will be immediately and irreparably harmed absent a Temporary Restraining Order from this

Court. Without entry of the Temporary Restraining Order, Plaintiff may be unable to recover for her equitable claims.

13. Moreover, considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions -- and to maintain the status quo to avoid dissipation of the money illegally taken from Plaintiff -- it is imperative to freeze the cryptocurrency exchange accounts owned or controlled by Defendant BULASA that are tied to the BINANCE Destination Addresses, the POLONIEX Destination Addresses, and any Cryptocurrency Wallet Addresses maintained by Defendant BULASA, for him, or by any person or entity working with him or under his control to which Defendant BULASA transferred any portion of the funds stolen from Plaintiff.

14. Plaintiff was victimized by the theft of her cryptocurrency assets, and it appears from the record that Defendant BULASA has no right to claim either possession or ownership of Plaintiff's stolen assets. Therefore, there is a high likelihood Plaintiff will succeed on her claims.

15. The balance of hardships also favors Plaintiff, because a Temporary Restraining Order would preserve the *status quo ante* and prevent irreparable harm until such time as the Court may hold a hearing.

16. Entry of a Temporary Restraining Order will not harm the public interest, which is properly served by promoting the objectives of the Financial Crimes Enforcement Network [FinCEN] (a division of the U.S. Department of the Treasury) and providing assurance that courts will protect investors' assets from theft and will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like the purloined assets in this action.

17. Because of the apparent strength of Plaintiff's case, the Court concludes that Plaintiff need only provide a modest amount of security pursuant to Fed.R.Civ.P. 65(c) at this time.

Accordingly, IT IS HEREBY ORDERED AND ADJUDGED that:

### **TEMPORARY RESTRAINING ORDER**

1. Plaintiff's Emergency Motion for Temporary Restraining Order against Defendant JERRY BULASA is GRANTED.

2. Defendant BULASA and his agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which he/they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby temporarily restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of Defendant BULASA or any business entity through which he acts or which acts in active concert or participation with him; including but not limited to those assets currently held in: (1) any cryptocurrency exchange accounts owned or controlled by Defendant BULASA that are tied to the BINANCE Destination Addresses, the POLONIEX Destination Addresses, and any Cryptocurrency Wallet Addresses maintained by Defendant BULASA, for him, or by any person or entity working with him or under his control; (2) any account at any other financial institution, bank, trading exchange, or investment firm; and (3) any cryptocurrency wallet or cryptocurrency trading account they maintain or control anywhere other than in either the cryptocurrency exchange accounts owned or controlled by Defendant BULASA that are tied to the BINANCE Destination Addresses, the POLONIEX Destination Addresses, and any Cryptocurrency Wallet Addresses maintained by Defendant BULASA, for him, or by any person or entity working with him or under his control.

### **NOTICE PROVIDED TO DEFENDANT BULASA**

3. On March 30, 2022, Plaintiff sent Defendant BULASA a letter that, *inter alia*:

    (a) apprises Defendant BULASA of this lawsuit,

    (b) provides Defendant BULASA a copy of the Complaint, Civil Action Summons, the original Motion for Temporary Restraining Order, and the Order denying that motion [Docket Entry Nos. 1, 2, 3, 10];

    (c) informs Defendant BULASA that although the original Motion for Temporary Restraining Order was denied by the Court because Defendant BULASA had not been provided prior notice of the relief sought therein; Plaintiff would be reapplying to the Court for the same relief following notice to Defendant BULASA; and

    (d) suggests Defendant BULASA appear before the Court to defend his rights and his legal interests as he sees prudent.

4.      Counsel for Plaintiff has informed the Court through a sworn Declaration that as of the filing of Plaintiff's Renewed Motion, Defendant BULASA had not contacted counsel.

## BOND TO BE POSTED

5.      Pursuant to Fed.R.Civ.P. 65(c), requiring that security must typically be posted by Plaintiff, the Court has determined that One Hundred Dollars ($100.00) would be more than adequate to pay the costs and damages, if any, sustained by any party found to have been wrongfully enjoined or restrained by this Order. Therefore, pursuant to Fed.R.Civ.P. 65, Plaintiff shall -- within ten (10) calendar days of this Order -- post a bond in the amount of One Hundred Dollars ($100.00) to secure this Order. In lieu of a bond, Plaintiff may post cash or its equivalent with the Clerk of Court.

6.      Upon a showing of good cause by any party-of-interest, the Court may enter a further order amending the amount of Plaintiff's bond requirement as means of providing a source of funds to which Defendant BULASA may be entitled for a wrongful injunction or restraint.

## PRELIMINARY INJUNCTION HEARING

7.      Pursuant to Fed.R.Civ.P. 65(b), Defendant BULASA shall appear on April __, 2022 at ___:___ a.m./p.m. Central Time, before United States District Judge Amos L. Mazzant, III at the Paul Brown United States Courthouse, 101 East Pecan Street, Sherman, TX 75090, for a hearing at which Defendant BULASA may show good cause why this Court should not enter a preliminary injunction, enjoining the violations of law alleged in Plaintiff's Complaint and imposing such

additional relief as the Court deems just and proper, pending final ruling on the claims asserted against Defendant BULASA.

8. Defendant BULASA shall file with the Court and serve on Plaintiff's counsel any answering affidavits, pleadings, motions, expert reports or declarations and/or legal memoranda no later than five (5) days prior to the hearing for preliminary injunction.

9. If Defendant BULASA timely files with the Court any papers opposing entry of a preliminary injunction, Plaintiff may file with the Court responsive or supplemental pleadings, materials, affidavits, or memoranda and serve same on Defendant BULASA shall or his counsel-of-record no later than two (2) days prior to the preliminary injunction hearing.

10. Defendant BULASA is hereby on notice that failure to timely serve and file his opposition, or failure to appear at the hearing, may result in the imposition of a preliminary injunction against him pursuant to Fed.R.Civ.P. 65.

## DURATION OF TEMPORARY RESTRAINING ORDER

11. The Temporary Restraining Order will expire fourteen (14) days from its entry in accordance with Fed.R.Civ.P. 65(b)(2) unless, for good cause shown, this Order is extended or Defendant BULASA consents that it should be extended for a longer period of time. However, the Court may, upon demonstration of good cause by any party-of-interest, shorten or lift this Order.

## SERVICE OF THIS ORDER AND RELATED FILINGS

12. As soon as is practical upon learning Defendant BULASA's true identity and obtaining his contact information, Plaintiff shall forthwith serve a copy of this Order on Defendant BULASA by U.S. First Class Mail, overnight delivery, facsimile, electronic mail or other messaging service (such as WhatsApp), or personally by agents or employees of Plaintiff, by private process server, upon any person or entity that may have possession or control of any property, property right, funds, or asset that may be subject to any provision of this Order.

13. The above dates may be revised upon stipulation by all parties and approval of this Court.

**DONE and ORDERED** in Chambers in Sherman, Texas.