# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| DIVYA GADASALLI, § | |
| § | |
| *Plaintiff,* § | |
| § | Civil Action No. 4:22-CV-249 |
| v. § | Judge Mazzant |
| § | |
| JERRY BULASA, DONG LIAN, DANYUN § | |
| LIN, TD BANK, N.A., ABACUS § | |
| FEDERAL SAVINGS BANK, BINANCE § | |
| HOLDINGS, LTD, D/B/A BINANCE, and § | |
| POLONIEX, LLC, § | |
| § | |
| *Defendants.* § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Divya Gadasalli's Renewed Emergency Motion for Temporary Restraining Order Without Notice Against Defendant Jerry Bulasa (Dkt. #11). Having reviewed the motion and relevant pleadings, the Court finds that the motion should be **DENIED**.

## BACKGROUND

On March 28, 2022, Plaintiff Divya Gadasalli ("Gadasalli") filed her Complaint (Dkt. #1) in this case against Defendants Jerry Bulasa ("Bulasa"), Dong Lian ("Lian"), and Danyun Lin ("Lin"), as well as TD Bank, N.A. ("TD Bank"), Abacus Federal Savings Bank ("Abacus Bank"), Binance Holdings, LTD d/b/a Binance ("Binance"), and Poloniex, LLC ("Poloniex").[1] According to the Complaint, Bulasa, assisted by Lian and Lin, conned Gadasalli out of eight million dollars' worth of cryptocurrency.

---

[1] The Complaint alleges TD Bank is a national banking association with its principal place of business in New Jersey; Abacus Bank is a federal savings bank headquarted in New York; Binance is a foreign digital currency wallet platform; and Poloniex is a cryptocurrency exchange platform registered in Delaware with its principal place of business in Massachusetts. While Gadasalli named these parties, as well as Lian and Lin, in the Complaint, Gadasalli brought the present motion for a temporary restraining order only against Bulasa.

In May 2021, Bulasa and Gadasalli met through the online dating service, Tinder, and formed what Gadasalli believed to be a genuine romantic connection. Bulasa appeared as a diamond in the rough—a young, hard-working New Yorker who had honorably taken over the family business when his father fell ill. To Gadasalli, Bulasa offered the promise of romance and true love that Gadasalli had long searched for. As their relationship progressed, however, Bulasa's "love" turned into a financial demand.

Bulasa portrayed himself to be "a very successful and savvy cryptocurrency investor" (Dkt. #1 at ¶ 60), and in a short time had convinced Gadasalli to "use[] some family funds to invest in cryptocurrency" (Dkt. #1 at ¶ 61). On May 13, 2021, at Bulasa's instruction, Gadasalli made her first wire transfer in the amount of $10,000 to a bank account held under Lian's name. In return for the funds, Lian then transferred cryptocurrency to Bulasa, purportedly for Bulasa to invest on Gadasalli's behalf. Over the next few weeks, Gadasalli made three more transfers totaling $350,000, each time to an account held by either Lian or Lin.

Bulasa then convinced Gadasalli to open an account with U.S.-based cryptocurrency exchange platform, Coinbase. Gadasalli funded this account "with additional family monies that were used to purchase cryptocurrency that was subsequently transferred to cryptocurrency investment firm accounts operated by [Bulasa]" (Dkt. #1 at ¶ 66). The nearly six million dollars Gadasalli funded into her Coinbase account was used to purchase Tether, a type of stablecoin cryptocurrency "hosted on the Ethereum and Bitcoin blockchains" (Dkt. #1 at p. 16 n.6). The Tether was then sent to an investment account Bulasa allegedly opened for Gadasalli that was maintained at cryptocurrency investment firms, CoinFund and Digital Fund (Dkt. #1 at ¶ 67).

In total, after many subsequent transactions occurring throughout 2021, Gadasalli wired over eight million dollars to Bulasa, Lin, and Lian. Though Bulasa told Gadasalli that the

investment accounts had grown to a value of approximately ten million, Gadasalli "was unable to withdraw any of those funds . . . from her account" (Dkt. #1 at ¶¶ 71–72). In fact, Bulasa "provided multiple, implausible excuses as to why [Gadasalli] could not retain control over her own assets" (Dkt. #1 at ¶ 78). Yet blockchain analytics successfully traced Gadasalli's funds to cryptocurrency wallet addresses under Bulasa's control (Dkt. #1 at ¶ 81).

Frustrated and unable to see any viable way out of the financial hole into which Bulasa had placed her, Gadasalli filed suit. Against Bulasa, Gadasalli brought claims of fraudulent inducement, negligent misrepresentation, conversion, and civil conspiracy; against Lian and Lin for civil conspiracy; against Binance and Poloniex for aiding and abetting conversion; and against TD Bank and Abacus Bank for the imposition of a constructive trust and disgorgement of funds (Dkt. #1). Gadasalli subsequently filed an emergency *ex parte* motion for a Temporary Restraining Order ("TRO") against Bulasa (Dkt. #2). The Court denied the motion without prejudice for counsel's failure to certify its efforts to give notice of the motion to Bulasa, in accordance with Federal Rule of Civil Procedure 65 (Dkt. #10).

On March 30, 2022, Gadasalli filed the current motion (Dkt. #11), a renewed request that the Court issue an *ex parte* TRO against Bulasa. Specifically, Gadasalli requests the Court freeze Bulasa's assets, including certain cryptocurrency accounts and cryptocurrency Wallet Addresses.

**LEGAL STANDARD**

A party seeking a temporary restraining order must establish the same elements needed to obtain a preliminary injunction: (1) a substantial likelihood of success on the merits; (2) a substantial threat plaintiff will suffer irreparable harm if the injunction is not granted; (3) the threatened injury outweighs any damage the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372

3

(5th Cir. 2008). "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Id.* Nevertheless, a movant "'is not required to prove its case in full at a preliminary injunction hearing.'" *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1985) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). The decision whether to grant a preliminary injunction lies within the sound discretion of the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).

## ANALYSIS

The Court denied Gadasalli's initial request for a temporary restraining order because "her counsel failed to certify in writing any efforts made to give notice to [Bulasa] of this motion" (Dkt. #10 at p. 2). Thus, the Court will begin by addressing whether Gadasalli has now satisfied the notice requirements of Rule 65, before addressing whether the Court may grant this motion on its merits.

**I.      Rule 65 Notice**

"A motion for a temporary restraining order must comply with Federal Rule of Civil Procedure 65(b)(1)." *Davis v. Angelina Coll. Bd. of Trs.*, 9:17-CV-179, 2017 WL 11472539, at *1 (E.D. Tex. Oct. 19, 2017). Rule 65 requires "the movant's attorney [to] certif[y] in writing any efforts made to give notice and the reasons why it should not be required." FED. R. CIV. P. 61(b)(1). The Court finds that Gadasalli has now satisfied Rule 65's notice requirements.

Gadasalli has provided exhibits and offered information regarding her attempts to notify Bulasa of the lawsuit and this motion (*see* Dkt. #11-1). Without a mailing address, counsel for Gadasalli resorted to the most reliable form of communication accessible to them. Specifically, Gadasalli sent an electronic copy of the Complaint and TRO filings to Bulasa via WhatsApp—the

primary method of communication between the two. Moreover, summons has been issued and is in the process of being served on Bulasa. Given the lack of information known about Bulasa—including his full legal name, mailing address, email address, or phone number—the Court is satisfied that these efforts meet the requirement of Rule 65.

The Court will now address whether it may grant Gadasalli's requested injunctive relief.

**II.      Injunctive Relief**

Gadasalli requests the Court issue a TRO freezing certain financial assets belonging to or under the control of Bulasa. However, the Court does not have the authority to grant the injunction sought because Gadasalli's claims against Bulasa are purely legal in nature.

The Court's authority to preliminarily freeze assets through injunctive relief is governed by the principles set out in two Supreme Court decisions—*Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940), and *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999). In *Deckert*, the Supreme Court held that a district court has the power to issue a preliminary injunction freezing a defendant's assets in suits sounding in equity. 311 U.S. at 289–91; *see also De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945) (reaffirming *Grupo Mexico* in stating a "preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally"). Then, in *Grupo Mexicano*, the Supreme Court held that a district court does not have the power to issue an injunction preventing a defendant from transferring assets in an action seeking purely legal relief or money damages. 527 U.S. at 318–19; *see also Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 Fed. App'x 707, 708 (5th Cir. 2007) (per curiam) (affirming that *Grupo Mexicano* is limited to actions at law).

Thus, "[t]o apply these principles, [the Court] must begin with an analysis of the claims in suit to determine whether they seek cognizable relief in equity involving assets of the defendant."

*Rahman v. Oncology Assocs., P.C.*, 198 F.3d 489, 497 (4th Cir. 1999); *accord Newby v. Enron Corp.*, 188 F. Supp. 2d 684, 696 (S.D. Tex. 2002). Plaintiffs that seek cognizable relief in equity "must show a sufficient nexus between the assets sought to be frozen and the equitable relief plaintiffs request." *Newby*, 188 F. Supp. 2d at 697. The second step is "to determine whether the interim relief sought—in this case the preliminary injunction freezing assets—is a reasonable measure to preserve the *status quo* in aid of the ultimate equitable relief claimed." *Rahman*, 198. F.3d at 497.

Turning to this case, the Court begins with an analysis of the claims brought against Bulasa to determine whether Gadasalli seeks equitable relief, "so that *Deckert*, rather than *Grupo*, governs." *Newby*, 188 F. Supp. 2d at 696–97. This analysis requires the Court to assess the allegations and relief as raised in the Complaint. *See Deckert*, 311 U.S. at 234 ("It is enough at this time to determine that the [complaint] contains allegations which, if proved, entitle petitioners to some equitable relief.").

Here, the Complaint brings claims against Bulasa for fraudulent inducement, negligent misrepresentation, conversion, and civil conspiracy (Dkt. #1). The remedies Gadasalli requests for each of these claims are identical—damages, including principal, interest, lost profits, and expenses (Dkt. #1 at ¶¶ 91, 98, 106, 117). Specifically, Gadasalli pleads that as a result of Bulasa's conduct, she has suffered eight million dollars, lost profits, interest, and costs and expenses. Thus, Gadasalli seeks solely money damages against Bulasa.

Money damages, however, "are not typically available in equity." *Central States, Se. & Sw. Areas Health & Welfare Fund v. Health Special Risk, Inc.*, 756 F.3d 356, 363 (5th Cir. 2014) (stating that for money damages to be available under an equitable theory, "both the basis of the claim and the nature of the relief must be equitable."). To be sure, money damages are usually

"given to the plaintiff to substitute for a suffered loss, whereas specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.'" *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 262 (defining the ordinary meaning of "money damages" as "a sum of money used as compensatory relief") (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 895 (1988)). Nothing in Gadasalli's Complaint or this motion indicates that the general rule—that money damages are not equitable—should apply any differently in this case. Thus, the Court finds that Gadasalli is not seeking cognizable relief in equity against Bulasa.

Because Gadasalli's seeks purely legal relief in money damages against Bulasa, the Court does not have the power to issue an injunction freezing Bulasa's assets. *Grupo Mexicano*, 527 U.S. at 318–19. Therefore, Gadasalli's request for a temporary restraining order must be denied.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff Divya Gadasalli's Renewed Emergency Motion for Temporary Restraining Order Without Notice Against Defendant Jerry Bulasa (Dkt. #11) is hereby **DENIED without prejudice**.

**IT IS SO ORDERED.**
**SIGNED this 1st day of April, 2022.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE