## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| DIVYA GADASALLI, an individual, | Case No. 4-22:CV-00249 |
| Plaintiff, | Hon. Amos L. Mazzant, III |
| - v. - | |
| JERRY BULASA, an individual; DONG LIAN, an individual; DANYUN LIN, an individual; TD BANK, N.A., a national banking association; ABACUS FEDERAL SAVINGS BANK, a federal savings bank; BINANCE HOLDINGS, LTD. d/b/a Binance, a foreign company; and POLONIEX, LLC, a Delaware limited liability company, POLO DIGITAL ASSETS, LTD., a foreign company, | |
| Defendants. | |

## DEFENDANT BINANCE HOLDINGS LTD'S MOTION TO DISMISS THE AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 3

STATEMENT OF THE ISSUES........................................................................................ 4

ARGUMENT .................................................................................................................... 5

    I.   This Court Lacks Personal Jurisdiction Over Binance ...................................................... 5

        A.   Binance is Not Subject to General Jurisdiction in Texas ......................................... 6

        B.   This Court Lacks Specific Jurisdiction Over Binance ........................................... 10

            1.   Plaintiff Fails to Allege That Binance Purposefully Directed Activities Toward Texas ............................................................................................... 10

            2.   Plaintiff's Harm Does Not "Arise From" Any Binance Business Activity in Texas.................................................................................................... 11

            3.   The Exercise of Jurisdiction Over Binance Is Neither Fair nor Reasonable . 12

        C.   Plaintiff Fails to Plead Alter Ego Status Between Binance and BAM, Which, In Any Event, Would Not Establish Personal Jurisdiction in Texas ......................... 12

            1.   Plaintiff Fails to Plead Adequately Alter Ego Status Between Binance and BAM .................................................................................................... 13

            2.   Plaintiff Fails to Plead Any Facts Establishing Jurisdiction Over BAM to Texas.................................................................................................... 15

    II.   Alternatively, the Amended Complaint Should be Dismissed Against Binance For Failure to Plead a Cognizable Claim.......................................................................... 16

CONCLUSION................................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Administrators of Tulane Educ. Fund v. Ipsen, S.A.*,
    450 F. App'x 326 (5th Cir. 2011) ............................................................. 15

*Alpine View Co. v. Atlas Copco A.B.*,
    205 F.3d 208 (5th Cir. 2000) ................................................................... 5

*Anderson v. Nat'l City Mortg.*,
    2012 WL 612562 (N.D. Tex. Jan. 17, 2012) ........................................... 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................. 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................. 16

*Burback v. Oblon*,
    2021 WL 4477607 (E.D. Tex. Sept. 30, 2021) ....................................... 14

*Clemens v. McNamee*,
    615 F.3d 374 (5th Cir. 2010) ................................................................... 5

*Covington Marine Corp. v. Xiamen Shipbuilding Indus. Co.*,
    504 F. App'x 298 (5th Cir. 2012) ........................................................... 15

*Cruden Bay Holdings, LLC v. Jezierski*,
    2022 WL 447080 (N.D. Tex. Feb. 14, 2022) ......................................... 18

*Cunningham v. Assured Auto Group, Inc.*,
    2021 WL 1139744 (E.D. Tex. 2021) ................................................. 5, 10

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ............................................................................. 6, 8

*Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*,
    24 F.4th 491 (5th Cir. 2022) ................................................................... 12

*Dickson Marine Inc. v. Panalpina, Inc.*,
    179 F.3d 331 (5th Cir.1999) ................................................................... 13

*Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.*,
    2016 WL 6917272 (E.D. Tex. Sept. 1, 2016) ................................... 13, 14

ii

*Firestone Steel Prod. Co. v. Barajas*,
    927 S.W.2d 608 (Tex. 1996) ........................................................................ 18

*First United Pentecostal Church of Beaumont v. Parker*,
    514 S.W.3d 214 (Tex. 2017) ....................................................................... 17

*Frank v. P N K (Lake Charles) L.L.C*,
    947 F.3d 331 (5th Cir. 2020) ......................................................................... 6

*Funk v. Stryker Corp.*,
    631 F.3d 777 (5th Cir. 2011) ....................................................................... 13

*Goldstein v. Mortenson*,
    113 S.W.3d 769 (Tex. App.—Austin 2003, no pet.) ................................... 17

*Gonzalez v. Bank of Am. Ins. Servs., Inc.*,
    454 F. App'x 295 (5th Cir. 2011) ............................................................... 14

*Guarini v. Doe, et al.*,
    No. 21-cv-81890 (S.D. Fla. Apr. 5, 2022) ........................................ 2, 6, 15

*Hargrave v. Fibreboard Corporation*,
    710 F.2d 1154 (5th Cir.1983) ..................................................................... 15

*Hazim v. Schiel & Denver Book Publishers*,
    647 F. App'x 455 (5th Cir. 2016) .............................................................. 7, 9

*Heinze v. Tesco Corp.*,
    971 F.3d 475 (5th Cir. 2020) ....................................................................... 16

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ...................................................................................... 7

*Hollier v. Jefferson Cnty.*,
    2010 WL 11628575 (E.D. Tex. Dec. 7, 2010) ........................................... 18

*Hopper v. Ford Motor Co.*,
    837 F. Supp. 840 (S.D. Tex. 1993) ............................................................. 15

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ...................................................................................... 5

*J-L Chieftan, Inc. v. W. Skyways, Inc.*,
    351 F. Supp. 2d 587 (E.D. Tex. 2004) .......................................................... 8

*Johnston v. Multidata Systems Int'l Corp.*,
   523 F.3d 602 (5th Cir. 2008) ........................................................................ 5, 9

*Kirschstein v. Bowie Cnty., Texas*,
   2008 WL 11449196 (E.D. Tex. May 14, 2008) ...................................................... 14

*Latshaw v. Johnston*,
   167 F.3d 208 (5th Cir. 1999) ........................................................................... 5

*Lee v. Binance*,
   No. 20-cv-02803 (S.D.N.Y. Mar. 31, 2022) ...................................................... 2, 7

*Libersat v. Sundance Energy, Inc.*,
   978 F.3d 315 (5th Cir. 2020) ........................................................................... 5

*Licea v. Curacao Drydock Co. Inc.*,
   952 F. 3d 207 (5th Cir. 2015) ..................................................................... 13, 14

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
   66 F. Supp. 3d 813 (E.D. Tex. 2014) .............................................................. 8

*McFadin v. Gerber*,
   587 F.3d 753 (5th Cir. 2009) ......................................................................... 10

*Monkton Ins. Servs., Ltd. v. Ritter*,
   768 F.3d 429 (5th Cir. 2014) ............................................................... 6, 8, 9, 11

*Norris v. Hearst Tr.*,
   500 F.3d 454 (5th Cir. 2007) ......................................................................... 13

*Null v. Bank One of Columbus, N.A.*,
   988 F.2d 1210 (5th Cir. 1993) ......................................................................... 8

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
   253 F.3d 865 (5th Cir. 2001) ..................................................................... 7, 10

*Patterson v. Aker Solutions Inc.*,
   826 F.3d 231 (5th Cir. 2016) ..................................................................... 6, 10

*Perkins v. Benguet Consol. Min. Co.*,
   342 U.S. 437 (1952) ...................................................................................... 10

*Residents of Gordon Plaza, Inc. v. Cantrell*,
   25 F.4th 288 (5th Cir. 2022) ......................................................................... 16

*Reynolds v. Binance Holdings Ltd.*,
    481 F. Supp. 3d 997 (N.D. Cal. 2020) ............................................................................. 2, 6, 14, 15

*Schindley v. Lituchy*,
    2006 WL 2504953 (E.D. Tex. Aug. 28, 2006) .................................................................. 12

*Tri v. J.T.T.*,
    162 S.W.3d 552 (Tex. 2005) ............................................................................................. 18

*Walden v. Fiore*,
    571 U.S. 277 (2014) .................................................................................................. 10, 11, 12

*Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*,
    517 F.3d 235 (5th Cir. 2008) ............................................................................................ 10

*Ward v. Rhode*,
    544 F. App'x 349 (5th Cir. 2013) ....................................................................................... 7

*WickFire, L.L.C. v. Laura Woodruff; TriMax Media, L.L.C.*,
    989 F.3d 343 (5th Cir. 2021) ............................................................................................ 17

*Wilson v. Belin*,
    20 F.3d 644 (5th Cir. 1994) ................................................................................................ 5

## **Rules**

Federal Rule of Civil Procedure 12(b)(2) ................................................................................. 3, 4

Federal Rules of Civil Procedure 12(b)(6) ................................................................................... 1

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Defendant Binance Holdings, Ltd. ("Binance") moves to dismiss Plaintiff Divya Gadasalli's ("Plaintiff" or "Gadasalli") claims against Binance for lack of personal jurisdiction, or, in the alternative, for failure to state a claim upon which relief can be granted.

## INTRODUCTION

Plaintiff's Amended Complaint fails to cure the fundamental defects of her original pleading. As noted in Binance's prior motion to dismiss, Plaintiff has not—and cannot—meet her burden of establishing personal jurisdiction over Binance, a foreign cryptocurrency exchange with no headquarters or offices in the United States, much less Texas. (ECF No. 17). Indeed, Plaintiff does not identify a single point of contact between Binance and Texas, and does not claim to have ever interacted with Binance. Rather than address these deficiencies (flagged in Binance's prior motion to dismiss), Plaintiff amended her complaint and simply added a new, bald assertion that Binance is the alter ego of BAM Trading Services ("BAM") d/b/a Binance.US. Public filings make clear that BAM is a separate company, based in California, and BAM is not alleged to have any connection to Texas, or to have been involved in the events at issue. Plaintiff's baseless speculation is insufficient to manufacture personal jurisdiction over Binance.

Plaintiff's various theories for jurisdiction have been rejected by multiple courts now. A federal court in Florida recently dismissed another complaint against Binance brought by the *same plaintiff's counsel* for lack of personal jurisdiction because identical allegations—that an unidentified number of U.S.-based individuals use VPN software to access Binance, that Binance sponsored "celebrity fueled" public service videos encouraging viewers to do their own research on cryptocurrency, and that Binance has on occasion provided assistance to U.S. law enforcement—were "woefully inadequate to support the exercise of jurisdiction over [Binance]."

*Guarini v. Doe,* No. 21-cv-81890, at *2, *6 (DMM) (S.D. Fla. Apr. 5, 2022) (ECF No. 25).  The Florida court recognized Binance to be a foreign company incorporated in the Cayman Islands that is not "at home" in Florida for purposes of general jurisdiction, and held that the alleged harm to the plaintiff from a third party's fraud is not "inextricably entwined" with any alleged general course of business activity by Binance in the jurisdiction.  Similarly, a federal court in California found no general or specific personal jurisdiction over Binance and rejected plaintiff's attempt to assert alter ego status with BAM.  *See Reynolds v. Binance Holdings Ltd.,* 481 F. Supp. 3d 997 (N.D. Cal. 2020).  And a federal court in New York recently held that Binance is not a "domestic" exchange under the federal securities laws and therefore not "subject to the jurisdiction of the United States." *Lee v. Binance*, No. 20-cv-02803, at *8 (ALC) (S.D.N.Y. Mar. 31, 2022) (ECF No. 77).

In addition to failing to establish personal jurisdiction over Binance, Plaintiff also fails to state a cognizable claim against Binance.  Plaintiff alleges that a subset of the funds she sent to accounts at TD Bank and Abacus Bank—based on representations from a man she met on Tinder (defendant Jerry Bulasa)—were transferred to a Coinbase account, and then to accounts at a fake company called Digital Fund, and then to multiple other accounts not identified in the complaint, and later went to or passed through accounts at Binance. (Am. Compl. ¶¶ 89–93, 103–05).  Based on this alleged chain of events, Plaintiff has sued Binance for civil conspiracy.  But civil conspiracy requires knowledge and a "meeting of the minds" between conspirators.  The Amended Complaint is completely devoid of any allegation supporting this central element of Plaintiff's sole claim against Binance.

Accordingly, Binance should be dismissed from this action pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of jurisdiction or, in the alternative, Count IV should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## BACKGROUND

According to the Amended Complaint, Plaintiff Divya Gadasalli is a Texas woman who met Defendant Bulasa on the dating app Tinder.  (Am. Compl. ¶¶ 10, 79).  She began a relationship with Bulasa and decided to wire hundreds of thousands of dollars to Bulasa's accounts at TD Bank and Abacus Bank.  (*Id.* at ¶ 85).  Those funds were allegedly transferred to an account at Coinbase and used to purchase the cryptocurrency Tether, which was then transferred to an investment account at a fake cryptocurrency exchange called Digital Fund.  (*Id.* at ¶¶ 89–93).  Plaintiff seeks eight million dollars based on her investment and promised profit.  (*Id.* at ¶ 6).

Plaintiff alleges that some of the cryptocurrency owed to her ended up in accounts at Binance.  (*Id.* ¶ 103).  However, the Amended Complaint fails to provide any details on how the funds purportedly arrived in the Binance accounts.  The Amended Complaint does not include any transaction history tracing fund transfers from accounts owned by Plaintiff to any account at Binance; it only shows undated alleged transfers from unidentified source accounts to purported Binance wallets.  There are no allegations of any fact that should have caused Binance to flag these transfers, or any allegation of how Binance policies were violated by accepting these funds. Plaintiff does not allege that she ever had an account at Binance or that she had any communications with Binance.  Plaintiff also does not allege that she contacted law enforcement about the alleged theft or provide the status or findings of any law enforcement investigation.

Plaintiff originally commenced this action on March 28, 2022, asserting several claims against Bulasa for his fraudulent acts and a single claim against Binance for Aiding and Abetting

Conversion, in addition to claims against other co-defendants.  (Dkt. 1).  Plaintiff thereafter served Binance Holdings Ltd. in the Cayman Islands on March 30, 2022.  (Dkt. 12).  After Binance filed a motion to dismiss the original complaint for lack of personal jurisdiction and for failure to state a claim (Dkt. 17), Plaintiff withdrew her complaint and subsequently filed an Amended Complaint on May 20, 2022. (Dkt.  24).

## STATEMENT OF THE ISSUES

The first issue presented is whether this Court has personal jurisdiction over Binance pursuant to Federal Rule of Civil Procedure 12(b)(2).  Plaintiff's claims against Binance must be dismissed for lack of personal jurisdiction because this Court does not have general jurisdiction over Binance, a foreign company incorporated in the Cayman Islands with no offices or employees in Texas.  Nor does this Court have specific jurisdiction over Binance, as Plaintiff fails to allege that Binance directed any suit-related conduct towards Texas.  Plaintiff's new allegation that Binance is subject to personal jurisdiction based on acts of its alleged subsidiary, BAM, is unsupported, inconsistent with public records, and does not come close to meeting the requirements for "alter ego" status.

The second issue before the Court is whether, in the alternative, Plaintiff's single claim against Binance must be dismissed for failing to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The Amended Complaint fails to allege facts sufficient to state an actionable claim for civil conspiracy because it does not plead facts showing any "meeting of the minds" between Binance, Bulasa, and the other defendants, nor does it allege that Binance had actual knowledge of the alleged wrongdoing.

**ARGUMENT**

**I.      This Court Lacks Personal Jurisdiction Over Binance**

Plaintiff bears the burden of establishing a *prima facie* showing of personal jurisdiction over each defendant. *See Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 214 (5th Cir. 2000). Jurisdictional analysis over nonresident defendants is a two-step inquiry. *See Cunningham v. Assured Auto Group, Inc.*, No. 20-cv-141, 2021 WL 1139744, at *3 (E.D. Tex. 2021). "A federal court sitting in diversity may assert jurisdiction if (1) the state's long-arm statute allows it; and (2) exercising jurisdiction would not violate the Due Process Clause of the Fourteenth Amendment." *See Libersat v. Sundance Energy, Inc.*, 978 F.3d 315, 318 (5th Cir. 2020) (internal quotation marks omitted); *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Systems Int'l Corp.,* 523 F.3d 602, 609 (5th Cir. 2008). Due process requires that the defendant have "minimum contacts" with the forum state (*i.e.* that the defendant has purposely availed itself of the protections of the forum state) and that exercising jurisdiction is consistent with "traditional notions of fair play and substantial justice." *See Johnston,* 523 F.3d at 609 (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

Here, the Amended Complaint remains facially deficient because none of the sparse allegations establish that Binance is "essentially at home" in Texas or that Binance has engaged in "purposeful direction" or "availment" of the jurisdiction related to the events in question. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

### A.    Binance is Not Subject to General Jurisdiction in Texas

General jurisdiction exists over a non-resident defendant only when its "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Frank v. P N K (Lake Charles) L.L.C*, 947 F.3d 331, 336 (5th Cir. 2020); *Patterson v. Aker Solutions Inc.*, 826 F.3d 231, 234 (5th Cir. 2016) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)).  "Generally, a corporation's 'home' falls into two paradigmatic places: (1) the state of incorporation and (2) the state where it has its principal place of business." *Frank*, 947 F.3d at 337.  It is "incredibly difficult" to establish general jurisdiction in a forum other than the one in which a defendant is domiciled.  *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

Here, there is no basis to contend that Binance is "essentially at home" in Texas.  Binance is neither incorporated nor has its principal place of business in Texas (Am. Compl. ¶ 17), and there are no allegations that Binance has any offices, employees, property, or any continuous contacts with Texas.  Plaintiff's conclusory allegations about sporadic contacts between Binance and Texas, even taking these allegations as true, are insufficient to confer general jurisdiction.  *See Monkton*, 768 F.3d at 432 (finding a Cayman bank's interactive website insufficient to establish general jurisdiction "because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction—in other words, while it may be doing business with Texas, it is not doing business in Texas."); *see also Guarini,* No. 21-81890, at *6 (finding court lacked general jurisdiction over Binance because factual allegations about "customers' use of [Binance's] services in the United States is woefully inadequate to support the exercise of general jurisdiction over [Binance].");* Reynolds*, 481 F. Supp. 3d at 1003–04 (finding that Binance is not subject to general

personal jurisdiction in California because allegations about serving U.S. customers "do not illustrate that Binance has the requisite affiliations with California to be essentially at home in the state and subject to general jurisdiction in it.").[1]

*First*, the assertion that Binance "uses various third-party companies, including companies located within this jurisdictional district, to enable . . . its 'ecosystem' to function" (Am. Compl. ¶ 35) is baseless and insufficient as a matter of law to establish general jurisdiction over Binance. *See Lee,* No. 20-cv-02803, at *8 (finding allegations that Binance used U.S.-based infrastructure were not sufficient to find that Binance is a "domestic exchange" under the federal securities laws); *Ward v. Rhode*, 544 F. App'x 349, 352 (5th Cir. 2013) (fact that company's website servers were located in Texas, in addition to other contacts, was "insufficient to meet the 'continuous and systematic' standard required for a court to exercise general jurisdiction"). Plaintiff also does not identify the purported third-party companies in the forum used by Binance.

*Second,* Plaintiff's allegations that Texas residents can theoretically use a third-party VPN program to circumvent Binance's block of U.S. users does not speak to any action by Binance and is irrelevant to the jurisdictional inquiry. Am. Compl. ¶¶ 46–56. As the Supreme Court has long held, "[s]uch unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417 (1984); *see also Monkton*, 768 F.3d at 432. The existence of third-party software that

---

[1]  Allegations about BAM d/b/a Binance.US are irrelevant because the business activities of an affiliate do not subject a company to general jurisdiction in Texas. *See Hazim v. Schiel & Denver Book Publishers*, 647 F. App'x 455, 459 (5th Cir. 2016); *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001). In addition, as discussed below, *see infra* § I.C, BAM and Binance are not alter egos and, in any event, the activities of BAM in the United States generally do not give rise to jurisdiction over BAM in Texas.

could be used to circumvent Binance's restrictions against U.S. users does not give rise to personal jurisdiction over Binance.  Similarly, allegations that Binance's CEO tweeted approvingly of VPNs and a news article referenced "strategic" use of VPNs (Am. Compl. ¶ 53) does not provide any evidence that Binance is somehow directing third party action.  And even if there are users in Texas who used a VPN to access Binance (*see* Am. Compl. ¶ 52), the mere existence of customers in a jurisdiction does not establish general jurisdiction.  *See Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.,* 66 F. Supp. 3d 813, 822 (E.D. Tex. 2014) (holding that "doing business with persons in a particular district is not enough to satisfy the requirement of general jurisdiction that the corporation's contacts with the forum be so continuous and systematic as to render the corporation essentially at home in the forum." (citing *Daimler,* 571 U.S. at 139)).

  *Third*, Binance's sponsorship of public service videos encouraging users to research cryptocurrencies for themselves (Am. Compl. ¶¶ 41–45) has no bearing on the jurisdictional analysis.  "Defendants' advertising in a publication with national circulation does not support a finding of general jurisdiction." *Null v. Bank One of Columbus, N.A.*, 988 F.2d 1210, at \*1 (5th Cir. 1993) (citation omitted); *see also J-L Chieftan, Inc. v. W. Skyways, Inc.,* 351 F. Supp. 2d 587, 595 (E.D. Tex. 2004) (same).  Here, the video cited in the Amended Complaint did far less, as it did not even encourage viewers to use Binance.  *See* Am. Compl. ¶ 42.  Instead, the videos were part of a "consumer empowerment campaign" using individuals "known for their honesty and

independence" to encourage viewers to use reliable sources to educate themselves about cryptocurrency.[2]

*Fourth*, the Amended Complaint's speculative and conclusory allegations that Binance "voluntarily works with American law enforcement" (Am. Compl. ¶ 34) because the Texas State Securities Board allegedly issued a cease and desist order against a company impersonating Binance is insufficient to establish jurisdiction.  "[V]ague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Hazim,* 647 F. App'x at 460.  The assertion that assistance to law enforcement renders Binance "at home" in Texas is illogical, unsupported, and against public policy.

*Finally,* Plaintiff's allegations about Binance's general contacts with the United States, from investment in a U.S. media organization to its sponsorship of a dinner and awards show (*see* Am. Compl. ¶¶ 37–40), plainly do not amount to "substantial, continuous, and systematic" contacts with Texas.  *Johnston*, 523 F.3d at 609–10 (holding that "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction"); *see also Monkton*, 768 F.3d at 432.

Simply put, Binance is a foreign corporation, and there are no allegations establishing this as the "exceptional case" where the court can exercise general jurisdiction over an out-of-state entity.  *See Patterson,* 826 F.3d at 235 (recognizing that the only "exceptional case" the Supreme Court has identified warranting the exercise of general jurisdiction over a foreign company

---

[2] Press Release, "Binance Unites J Balvin, Jimmy Butler and Valentina Shevchenko to Take on Big Game Crypto Ads, Invites Fans to Sound the #CryptoCelebAlert and Trust Themselves to Learn Crypto," (Feb. 9, 2022), available at https://www.binance.com/en/blog/community/binance-unites-j-balvin-jimmy-butler-and-valentina-shevchenko-to-take-on-big-game-crypto-ads-invites-fans-to-sound-the-cryptocelebalert-and-trust-themselves-to-learn-crypto-421499824684903392 (cited in Am. Compl. ¶ 42 n.5).

9

involved a company who relocated its business operations from the Philippines to Ohio during World War II) (citing *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437 (1952)). !

### B. This Court Lacks Specific Jurisdiction Over Binance

Unlike general jurisdiction, "specific" personal jurisdiction is claim-specific; a plaintiff must demonstrate that the nonresident defendant purposefully directed contacts at the forum, and the alleged injury arises out of or relates to those contacts. *See Panda Brandywine Corp.*, 253 F.3d at 868. "The relevant contacts are those the defendant himself creates with the forum state." *Cunningham*, 2021 WL 1139744, at *5 (citing *Walden v. Fiore,* 571 U.S. 277, 284 (2014)). To be subject to specific jurisdiction, the defendant must have acted to "purposefully avail itself of the privilege of conducting activities within the forum State" and "there must be an affiliation between the forum and the underlying controversy." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.,* 517 F.3d 235, 243 (5th Cir. 2008). The relevant inquiry is:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there;
>
> (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and
>
> (3) whether the exercise of personal jurisdiction is fair and reasonable.

*McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Plaintiff fails on all three steps.

#### 1. Plaintiff Fails to Allege That Binance Purposefully Directed Activities Toward Texas

The Amended Complaint lacks any factual allegation showing that Binance directed its activities to Texas. Binance is not alleged to have any offices or employees in Texas, and Binance.com restricts United States users from accessing the platforms. (*See* Binance.com "Terms of Use" § II(3)(b)(v), available at https://www.binance.com/en/terms). The most Plaintiff offers

is that one celebrity in a public service video sponsored by Binance grew up in Texas.  Am. Compl.
¶ 43.  That random personal fact is facially insufficient to establish that Binance "purposefully
directed" business activities towards Texas.

Additionally, the Amended Complaint's allegation that Binance "[took] possession of
Plaintiff's stolen cryptocurrency when it was transferred from Plaintiff's possession in Texas to
the Binance exchanges" (*id.* ¶ 31) does not qualify  as action by Binance directed towards Texas.
Indeed, the facts set forth in the Amended Complaint are inconsistent with this theory, as Binance
is not alleged to have received the funds directly from Plaintiff.  Plaintiff acknowledges having
voluntarily transferred the cryptocurrency at issue to accounts controlled by Bulasa prior to his
alleged theft, and the Amended Complaint remains silent on where Bulasa's accounts were located.
*Id*. ¶¶ 87, 90.  It is immaterial if Plaintiff or Bulasa took actions that subsequently caused money
to  be  transferred  to  Binance  because  "the  relationship  must  arise  out  of  contacts  that  the
'defendant *himself* 'creates with the forum state." *See Monkton*, 768 F.3d at 433 (citing *Walden,*
571 U.S. at 284).

### 2.     Plaintiff's Harm Does Not "Arise From" Any Binance Business Activity in Texas

Having failed to allege purposeful business activity by Binance in Texas, it follows that
Plaintiff cannot show that her alleged injury arises from such business activity.

Plaintiff further claims that she "suffered [harm] in Texas" because "her cryptocurrency
assets [being] stolen and laundered through computer servers in Texas." Am. Compl. ¶ 30.[3]
However, the United States Supreme Court has made clear that "mere injury to a forum resident

---

[3] Plaintiff also alleges that Binance's "unreasonably lax AML and KYC procedures," "encouraged
hackers." (*Id.* ¶ 29).  The events at issue in this case, however, do not involve any "hacking."
Plaintiff apparently voluntarily transferred her money to Bulasa, who then stole it.

is not a sufficient connection to the forum." *Walden*, 571 U.S. at 278; *see Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.,* 24 F.4th 491, 496-97 (5th Cir. 2022) ("The proper question is not whether [plaintiff] experienced a particular injury or effect in a particular location, but whether [defendant's] conduct connects it to the forum in a meaningful way.").  The fact that Plaintiff resided in the forum at the time of her alleged injury cannot establish personal jurisdiction over Binance.

### 3.    The Exercise of Jurisdiction Over Binance Is Neither Fair nor Reasonable

Because Plaintiff cannot satisfy the first two prongs of specific jurisdiction, this Court need not reach the third prong—whether the exercise of personal jurisdiction against Binance is fair and reasonable.  *Schindley v. Lituchy*, No. 5:05-cv-208, 2006 WL 2504953, at *8 (E.D. Tex. Aug. 28, 2006).  In any event, hauling a foreign defendant like Binance into this jurisdiction where it has no presence and no involvement in the underlying events is unreasonable, unfair, and at odds with fundamental notions of due process.

### C.    Plaintiff Fails to Plead Alter Ego Status Between Binance and BAM, Which, In Any Event, Would Not Establish Personal Jurisdiction in Texas

In her Amended Complaint, Plaintiff now alleges that jurisdiction exists over Binance because it is the "alter ego" of BAM (d/b/a Binance.US).  Plaintiff comes nowhere near meeting her burden of establishing this extraordinary relationship.  Indeed, alter ego status between Binance and BAM is inconsistent with public records and has been rejected by other federal courts.  Most importantly, the question of alter ego status is entirely irrelevant to personal jurisdiction over Binance because BAM too is not subject to general or specific jurisdiction in this forum.

12

### 1.   Plaintiff Fails to Plead Adequately Alter Ego Status Between Binance and BAM

There is no dispute that BAM is a "separately incorporated" legal entity.  Am. Compl. ¶¶ 63, 64.  Indeed, public records show that BAM is a separate company d/b/a Binance.US, based in California.  *See* https://www.fincen.gov/msb-registrant-search (results for "BAM Trading Services") (reflecting BAM's principal place of business is California)[4]; Am. Compl. ¶ 17 (alleging Binance is "registered and headquartered with its principal place of business in the Cayman Islands").  "As a general matter, the corporate form should not be lightly disregarded." *Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.*, No. 2:15-cv-2049-JRG, 2016 WL 6917272, at \*2 (E.D. Tex. Sept. 1, 2016).  Accordingly, when examining whether personal jurisdiction can be imputed through an affiliate relationship, the court must "begin with a presumption" that the entities are independent for jurisdictional purposes.  *Dickson Marine Inc. v. Panalpina, Inc.,* 179 F.3d 331, 338 (5th Cir.1999).  To overcome this presumption, Plaintiff must put forward clear evidence that one entity "controls the internal business operations and affairs" of the other entity. *Licea v. Curacao Drydock Co. Inc.,* 952 F. 3d 207, 213 (5th Cir. 2015).  Typical corporate relationships among affiliates are "not a sufficient basis to impute the contacts of a third party to the defendant under an alter ego theory."  *Fellowship Filtering Techs.,* 2016 WL 6917272, at \*2;

---

[4] The Court can take judicial notice of FinCEN registration documents and other public records. *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011) (finding district court took appropriate judicial notice of publicly-available government documents and transcripts from the FDA); *Norris v. Hearst Tr.,* 500 F.3d 454, 461 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").   !

*see Licea*, 952 F. 3d at 213 (holding that plaintiff must put forward evidence of some "plus factor" beyond a corporate family relationship).

Plaintiff's alter ego theory is based on the conclusory assertion that "Binance has the ability to control, and does in fact control, all corporate decision making at Binance.US." Am. Compl. ¶ 65(b). But Plaintiff offers no factual detail about the alleged control or corporation relationship between Binance and BAM. Mere "conclusory and vague allegations" are insufficient to establish alter ego liability. *Burback v. Oblon,* No. 4:20-CV-946-SDJ, 2021 WL 4477607, at *11 (E.D. Tex. Sept. 30, 2021) (dismissing complaint that "merely recite[d] the elements of alter ego liability without providing any specific facts"); *see also Kirschstein v. Bowie Cnty., Texas,* No. 5:07-CV-59-DF, 2008 WL 11449196, at *4 (E.D. Tex. May 14, 2008) (dismissing case because "allegations of alter ego . . . [did] not rise above the level of 'conclusory allegations or legal conclusions.'") (citation omitted).

The Amended Complaint also contains no well pleaded allegations on any of the factors considered in an "alter ego" analysis:  (1) the amount of stock owned by an affiliate in the other company;[5] (2) if the two corporations have separate headquarters; (3) if they have common officers and directors; (4) if they observe corporate formalities; (5) if they maintain separate accounting systems; (6) whether the affiliate exercises complete authority over the other company's general policy; and (7) whether the affiliate exercises complete authority over the other company's daily operations. *Gonzalez v. Bank of Am. Ins. Servs., Inc.,* 454 F. App'x 295, 300 (5th Cir. 2011) (quoting *Hargrave v. Fibreboard Corporation,* 710 F.2d 1154, 1159-60 (5th Cir. 1983); *see also*

---

[5] The closest Plaintiff comes to addressing ownership is an unsupported allegation, upon information and belief, that "CZ is principal owner of Binance and the principal, if not sole, owner of Binance.US." (Am. Compl. ¶ 64). But this "does not support an inference that *Binance* has an ownership interest in BAM." *Reynolds*, 481 F. Supp. 3d at 1008 n.7 (N.D. Cal. 2020) (emphasis in original).

*Administrators of Tulane Educ. Fund v. Ipsen, S.A.,* 450 F. App'x 326, 330 (5th Cir. 2011).

Instead, Plaintiff's allegations boil down to inferences that Binance shares information with BAM,

including technology, security practices, and branding.  Am. Compl. ¶¶ 65-67.[6]  Even if true,

however, none of these allegations establish alter ego status or suggest that corporate formalities

are not being observed.  *Hopper v. Ford Motor Co.,* 837 F. Supp. 840, 844 (S.D. Tex. 1993)

(finding defendant's "coordinat[ion] and cooperat[ion including] regularly shar[ing] financial and

operating information," in addition to ownership of a majority of the subsidiary's stock and the

existence of overlapping officers and directors, insufficient to establish alter ego jurisdiction).

In short, the Amended Complaint does not allege any "plus factor" that warrants conflating

the identities of two separate and independent corporations.[7]  Indeed, other federal courts have

rejected attempts to assert alter ego status between Binance and BAM.  *See Guarini,* No. 21-81890,

at *8 (recognizing that "Binance.US is not affiliated with the Binance that has been sued in this

action"); *Reynolds,* 481 F. Supp. 3d at 1004–05, 07 (rejecting argument that Binance and BAM

should be treated as alter egos for purposes of imputing contacts for personal jurisdiction).

### 2.     Plaintiff Fails to Plead Any Facts Establishing Jurisdiction Over BAM in Texas

Even if Plaintiff were able to establish that BAM was the alter ego of Binance—which it

cannot—that would still not give rise to personal jurisdiction over Binance because Plaintiff has

---

[6] Plaintiff's assertion that BAM is a "fiat gateway" for Binance (Am. Compl. ¶ 36) is a gross mischaracterization of the Terms of Use cited.  The section of the Terms of Use cited in the Amended Complaint does not mention BAM at all, much less identify it as a "fiat gateway."  Public records show that BAM is a separate cryptocurrency exchange.

[7] Plaintiff is also not entitled to discovery because she has not set forth any specific facts suggesting the existence of an alter ego relationship.  *See Covington Marine Corp. v. Xiamen Shipbuilding Indus. Co.,* 504 F. App'x 298, 303 (5th Cir. 2012) (upholding denial of discovery into alter ego status where plaintiff alleged only general allegations rather than the required specific facts to establish alter ego jurisdiction); *Reynolds,* 481 F. Supp. 3d at 1008–10 (rejecting alter ego theory concerning Binance and BAM without granting jurisdictional discovery to plaintiff).

not alleged any facts supporting general or specific jurisdiction over BAM in Texas.  BAM is a California-based entity that is neither incorporated nor headquartered in Texas.  It is not alleged to have any role in the events at issue.  Under well-established law (discussed above), the mere allegation that BAM conducts business in the United States generally does not give rise to personal jurisdiction in Texas.  Plaintiff's alter ego theory is, therefore, entirely irrelevant to this case.

## II.  Alternatively, the Amended Complaint Should be Dismissed Against Binance For Failure to Plead a Cognizable Claim.

As with the original Complaint, Plaintiff's effort to recover from Binance for the bad acts of other defendants also fails for the alternative reason that she has not stated a cognizable claim against Binance.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Residents of Gordon Plaza, Inc. v. Cantrell*, 25 F.4th 288, 295 (5th Cir. 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).  Accordingly, "a complaint must allege more than labels and conclusions, as a formulaic recitation of the elements of a cause of action will not do." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted)

Here, after apparently realizing that her original claim against Binance for aiding and abetting was decidedly deficient, Plaintiff now attempts to assert a claim in her Amended Complaint for "Civil Conspiracy" against Binance.  (Am. Compl. ¶¶ 132–51 (Count IV).) However, this claim fares no better under established law.

"The elements of a civil conspiracy under Texas law are as follows: (1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a

16

proximate result." *WickFire, L.L.C. v. Laura Woodruff; TriMax Media, L.L.C.*, 989 F.3d 343, 358 (5th Cir. 2021).  The Supreme Court of Texas has been clear that "an actionable civil conspiracy requires *specific intent* to agree to accomplish something unlawful or to accomplish something lawful by unlawful means." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017) (emphasis added).  "This inherently requires a meeting of the minds on the object or course of action."  *Id.*   "Thus, an actionable civil conspiracy exists only as to those parties who are aware of the intended harm or proposed wrongful conduct *at the outset of the combination or agreement*."  *Id.* (emphasis added).  "Moreover, proof that an individual had some collateral involvement in a transaction, and had good reason to believe that there existed a conspiracy among other parties to it, is insufficient of itself to establish that the defendant was a conspirator." *Goldstein v. Mortenson*, 113 S.W.3d 769, 779 (Tex. App.—Austin 2003, no pet.).

Even taking the allegations in the Amended Complaint as true for the purposes of this motion, there are no allegations (nor could there be) that Binance had any knowledge of the alleged fraud, or any communication at all with any other defendant, let alone any meeting of the minds with other defendants at the outset with specific intent to cause harm to Plaintiff, as required under Texas law to state a cognizable claim for civil conspiracy.

Instead of specific allegations of conspiracy, Plaintiff makes sweeping allegations that deficiencies in Binance's Anti-Money Laundering and Know Your Customer policies (AML/KYC) allowed fraudulent proceeds to be deposited in a Binance account without Binance's knowledge, and "allowed" defendants Bulasa, Lian and Lin to "launder and dissipate Plaintiff's stolen assets through Binance."  *See* Am. Compl. ¶ 146–47.  These allegations have nothing to do with knowledge of the alleged fraud, and therefore do not plead participation by Binance in a civil conspiracy.  *See Firestone Steel Prod. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996) ("For a

17

civil conspiracy to arise, the parties must be aware of the harm or the wrongful conduct at the beginning of the combination or agreement.  One cannot agree, expressly or tacitly, to commit a wrong about which he has no knowledge.")  There is also no allegation about what information was purportedly overlooked by Binance, or why Binance should have uncovered the fraud that Plaintiff herself and multiple other financial institutions or exchanges failed to catch.  In any event, the Supreme Court of Texas has "consistently held that there cannot be a civil conspiracy to be negligent." *Tri v. J.T.T.*, 162 S.W.3d 552, 557 (Tex. 2005).

In light of the foregoing principles, courts routinely dismiss claims of civil conspiracy where a meeting of the minds or specific intent is not pleaded properly.  *See, e.g., Cruden Bay Holdings, LLC v. Jezierski*, No. 3:21-CV-01170-E, 2022 WL 447080, at *5 (N.D. Tex. Feb. 14, 2022) (granting motion to dismiss civil conspiracy claim against bank for allegedly ignoring its own policies and failing to monitor accounts, thus allowing other defendants to deposit stolen funds); *Hollier v. Jefferson Cnty.*, No. 1:10CV314, 2010 WL 11628575, at *6 (E.D. Tex. Dec. 7, 2010) (dismissing claims where allegations of meeting of the minds was "entirely conclusory"); *Anderson v. Nat'l City Mortg.*, No. 3:11-CV-1687-N, 2012 WL 612562, at *5 (N.D. Tex. Jan. 17, 2012) (same).  Because Plaintiff has not sufficiently alleged that Binance had any knowledge of the other defendants' fraud, let alone that it entered into any meeting of the minds with them with specific intent to commit the tortious acts, this Court should dismiss the civil conspiracy claim against Binance.

## CONCLUSION

For the reasons discussed above, Binance respectfully requests that this Court dismiss Binance for lack of personal jurisdiction, or, in the alternative, dismiss Count IV as to Binance, with prejudice.

Dated: June 20, 2022

Respectfully submitted,

*/s/ Santosh Aravind*
Santosh Aravind
Texas Bar No. 24095052
Ryan Squires
Texas Bar No. 24044951
**SCOTT DOUGLASS MCCONNICO LLP**
303 Colorado Street, Suite 2400
Austin, Texas 78701
Tel:  512-495-6300
Fax: 512-495-6399
Email: saravind@scottdoug.com
            rsquires@scottdoug.com

Karen R. King (pro hac pending)
Lead Attorney
New York Bar No. 3933512
**MORVILLO ABRAMOWITZ GRAND IASON & ANELLO, P.C.**
565 Fifth Avenue
New York, New York 10017
Tel: (212) 856-9600
Fax:  (212) 856-9494
Email:  kking@maglaw.com

*Counsel for Defendant Binance Holdings, Ltd.*

!

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served on counsel of record by ECF on June 20, 2022:

*/s/ Santosh Aravind*
Santosh Aravind