# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| DIVYA GADASALLI, § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | |
| § | Civil Action No. 4:22-CV-249 |
| JERRY BULASA, DONG LIAN, § | Judge Mazzant |
| DANYUN LIN, BINANCE HOLDINGS, § | |
| LTD., POLONIEX, LLC, and POLO § | |
| DIGITAL ASSETS, LTD. § | |
| § | |
| *Defendants.* § | |

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Binance Holdings Ltd.'s Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction and Failure to State a Claim (Dkt. #32). Having considered the motion, the pleadings, and the relevant law, the Court finds that the motion should be **GRANTED.**

### BACKGROUND

This case arises out of an alleged scam involving cryptocurrency, where Plaintiff Divya Gadasalli ("Gadasalli") was promised romance and financial prosperity but ultimately ended up losing over eight million dollars. The specifics of the alleged fraudulent scheme devised by the Defendants Jerry Bulasa ("Bulasa"), Dong Lian, and Danyun Lin have been more fully set forth in the Court's Memorandum Opinion and Order on Gadasalli's emergency motion for a temporary restraining order (Dkt. #13).

Briefly, Gadasalli met Bulasa online through a dating service, and Gadasalli believed that they had a romantic connection. Eventually, Gadasalli began investing at the direction of Bulasa,

who she believed was a successful cryptocurrency investor. Although she was informed that her investments had grown to approximately ten million dollars by Bulasa, Gadasalli was unable to withdraw any of the actual funds from her account. After multiple excuses from Bulasa and being down over eight million dollars in the span of a year, Gadasalli filed the pending lawsuit.

In addition to suing Bulasa and his alleged accomplices, Gadasalli also sued a number of entities, one of those being Defendant Binance Holdings, Ltd. ("Binance") (Dkt. #24). Binance is a foreign digital currency wallet platform and is currently one of the largest cryptocurrency exchanges in the world (Dkt. #24 ¶ 17). Binance refers to itself as an "ecosystem" comprising of several interrelated components (Dkt. #24 ¶ 18).

On June 20, 2022, Binance filed the pending motion, asking the Court to dismiss any and all claims against it for a lack of personal jurisdiction and for failure to state a claim (Dkt. #32). On July 13, 2022, Gadasalli filed her response, opposing Binance's motion on both grounds (Dkt. #37). On July 27, 2022, Binance filed a reply (Dkt. #39).[1]

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that *in personam* jurisdiction exists. *See, e.g.*, *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).

To satisfy that burden, the party seeking to invoke the court's jurisdiction must "present sufficient facts as to make out only a *prima facie* case supporting jurisdiction," if a court rules on

---

[1] The Court also notes that on March 27, 2023, Gadasalli filed a Supplemental Filing to draw the Court's attention to the recently filed lawsuit against Binance in the Northern District of Illinois by the Commodity Futures Trading Commission, alleging that Binance violated various provisions of the Commodity Exchange Act (Dkt. #40). On April 4, 2023, Binance filed a response, stating that the lawsuit does not change the facts relevant for this motion (Dkt. #41).

a motion without an evidentiary hearing. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). When considering the motion to dismiss, "[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits." *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)); *Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977). Thus, courts accept a plaintiff's non-conclusory, uncontroverted allegations as true, and resolve conflicts between the facts contained in the parties' affidavits in the plaintiff's favor. *See, e.g.*, *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

## ANALYSIS

Binance requests that the Court dismiss Gadasalli's claims against it for a lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and alternatively, for a failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) (Dkt. #32 at p. 7). The Court will begin with its analysis on personal jurisdiction.

Gadasalli presents two theories regarding how the Court has personal jurisdiction over Binance. First, Gadasalli contends that Binance itself has purposefully placed itself in the United States, and in turn, Texas, based on the activity that it has conducted in the United States. Gadasalli asserts that this activity is valid to show both general and specific jurisdiction. Second, Gadasalli argues that through the doctrine of alter ego, Binance should take on the contacts of its American affiliate, Binance.US. Gadasalli requests that the Court disregard the separate corporate forms and the imputed contacts should be sufficient for the Court to exercise personal jurisdiction over Binance (Dkt. #37 at pp. 11–13).

The Court conducts a two-step inquiry when a defendant challenges personal jurisdiction.

*Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020).  First, the Court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant.  *Id.*  Second, the Court must determine whether the exercise of jurisdiction is consistent with due process under the United States Constitution.  *Id.*

In Texas, the long-arm statute's broad doing business language authorizes personal jurisdiction over a nonresident defendant as far as the federal constitutional requirements of due process will allow.  *Id.*  (citing *Zinc Nacional, S.A. v. Bouche Trucking, Inc.*, 308 S.W.3d 395, 397 (Tex. 2010)).  Accordingly, the Court may exercise personal jurisdiction over Binance only to the extent authorized by the Due Process Clause.  The sole inquiry that remains then is whether personal jurisdiction offends or comports with federal constitutional guarantees.  *Bullion*, 895 F.2d at 216.  The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant when the defendant has established minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Those "minimum contacts" can give rise to two types of personal jurisdiction: general or specific.  *See, e.g.*, *Frank*, 947 F.3d at 336.  General jurisdiction exists only when the defendant's contacts with the forum are so "'continuous and systematic' as to render them essentially at home in the forum State."  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations., S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  Likewise, specific jurisdiction exists if the asserted claims arise out of or relate to the defendant's contacts with the forum.  *See, e.g.*, *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 197 (5th Cir. 2019).  The Court will start its analysis on personal jurisdiction with Gadasalli's theory of alter ego.

**I.   Alter Ego**

Gadasalli argues that the Court should look at the relationship between Binance and

Binance.US, and in doing so, "fuse the two together for jurisdictional purposes," meaning that the contacts of one would be imputed to the other.[2] *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004) (citing *Hargrave v. Firebrand Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983)).  It is not a contested fact that these are two separate companies, rather, the parties dispute how the two are interrelated and if the relationship constitutes the certain relationship that this doctrine requires (Dkt. #32 at pp. 18–22; Dkt. #37 at pp. 11–13).

Under the doctrine of alter ego, when two corporations are essentially the "same entity, the jurisdictional contacts of one are the jurisdictional contacts of the other" for the purposes of a personal jurisdiction analysis.  *See Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 586 (5th Cir. 2010) (citing *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640 653 (5th Cir. 2002)).  However, this analysis is not a simple one.  Federal courts have found that the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon another corporate entity's contacts with the forum state when the two corporations are merely affiliates.  *See Frudensprung*, 379 F.3d at 346.  Rather, there must be "something beyond" that affiliation. *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999).  For this analysis, because separate corporate forms "should not be lightly disregarded," courts should begin with a presumption that the two entities are independent for jurisdictional purposes. *Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.*, No. 2:15-CV-2049, 2016 WL 6917272, at *2 (E.D. Tex. Sept. 1, 2016); *Dickson Marine*, 179 F.3d at 338.  However, this "presumption of institutional

---

[2] The parties consistently use the term "alter ego" throughout its briefing.  However, a "traditional alter ego" case consists of an individual or a corporation being brought in to court and the plaintiff alleges that the contacts of the principal business should apply to the individual or corporation, because they were used "as part of a basically unfair device to achieve an inequitable result." *United States v. Lothringer*, No. 20-50823, 2021 WL 4714609, at *1 (5th Cir. 2021).  Here, the Court is presented with almost the opposite situation, and while the proper analysis may be titled under another doctrine, the Court will continue to use this terminology moving forward. *See Licea v. Curacao Drydock Co., Inc.*, 952 F.3d 207, 213 n.5 (5th Cir. 2015) (noting that single business entity theory, alter ego, and other veil-piercing theories are constantly blurred by various Texas courts).

independence" for related corporate entities may be rebutted by "clear and convincing evidence" that one entity controls the internal business operations and affairs of the other entity. *Licea*, 952 F.3d at 213.

At least two other federal courts have heard a similar argument regarding this alter ego theory and declined to impute the contacts from Binance.US to Binance. *See Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1009 (N.D. Cal. Aug. 26, 2020) (holding that plaintiff failed to show that Binance is subject to personal jurisdiction based on its relationship with Binance.US); Order Granting Motion to Dismiss at 6, 8, *Guarini v. Doe*, No. 21-CV-81890 (S.D. Fl. Apr. 5, 2022), ECF No. 25 (denied theory based on finding that Binance.US is not actually affiliated with the Binance sued in the action, instead, was a subsidiary of BAM Trading Services); *see also Cox v. CoinMarketCap OpCo LLC*, No. CV-21-08197, 2023 WL 1929551, at *13–*15 (D. Ariz. Feb. 10, 2023) (finding that alter ego theory was invalid as to Binance Capital Management Co. and Binance.US).

The Court could conduct a full alter ego analysis, which would require analyzing the proper substantive law that would need to be applied and a detailed analysis into the two entities' interrelationship, but it is not necessary here. *See Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 195 (S.D. Tex. 2008) (discussing the general rule that alter ego is determined based on the law of the state of incorporation, but some courts are unclear as to what law to apply). That is because Gadasalli runs into a fatal problem when making its argument based on the alter ego theory. Binance argues that the "even if these two companies were alter egos, the Amended Complaint does not allege *any* contacts between [Binance.US] and Texas sufficient to establish personal jurisdiction over [Binance.US], making [Gadasalli]'s argument irrelevant" (Dkt. #39 at p. 8) (emphasis in original). The Court agrees.

Binance.US is an American entity that was created in September 2019 with its principal place of business in California (Dkt. #32 at p. 19). Assuming Gadasalli's argument that Binance and Binance.US should be treated as one entity is valid and the Court agrees that Binance.US's contacts should be imputed to Binance, there are no specific arguments that those imputed contacts would relate to Gadasalli's claims or that Binance.US's contacts are in Texas. In fact, since March 2021, Binance.US has been prohibited from operating in Texas. *Commissioner Issues Two Orders Stopping Three Online Investment Scams*, Texas State Securities Board (Mar. 15, 2021), https://www.ssb.texas.gov/news-publications/commissioner-issues-two-orders-stopping-three-online-investment-scams. While this does not end the analysis, the Court finds that it strongly disfavors a finding that Binance.US has the necessary contracts in Texas. Although the parties do not make this argument for Binance.US specifically, the Court will address the argument regarding the likelihood that individuals in Texas may be interacting with Binance.US through improper means, as individuals may download certain Virtual Private Networks ("VPNs") to circumvent the in-state restrictions. "Unilateral activity of another party or a third person is not an appropriate consideration" when determining sufficient contacts for the purposes of jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). Other than that, Gadasalli does not point to any specific contacts that Binance.US has with the forum state.

Gadasalli argues that "the relationship between the two essentially makes B[inance] at home in the United States, including in this jurisdiction" (Dkt. #37 at p. 11). While Gadasalli does arguably make a claim that Binance.US has certain contacts in the United States based on the activity that it conducts that could ultimately be imputed to Binance, none of those contacts specifically relate to the forum state and a mere conclusory statement that they do will not be enough to satisfy the necessary standard. Thus, even if Gadasalli's arguments regarding alter ego

and Binance.US's contacts were uncontroverted, it is insufficient to confer jurisdiction over Binance. *See Hazim v. Shiel & Denver Book Publishers*, 647 F. App'x 455, 459 (5th Cir. 2016) (unpublished). The Court will reject Gadasalli's theory that it may exercise personal jurisdiction based on a theory of alter ego. The Court will now address Gadasalli's arguments regarding Binance itself and whether the Court may properly exercise jurisdiction over the foreign entity.

## II.  Personal Jurisdiction — General

Gadasalli argues that both general and specific jurisdiction exist here (Dkt. #37 at p. 6). Starting with general jurisdiction, the Court may hear "any and all" claims against a defendant when the defendant's "affiliations with the State are 'so continuous and systematic' as to render them essentially at home in the forum State." *Daimler*, 571 U.S. at 127. As its name implies, general jurisdiction extends to all claims brought against a defendant, even those with no connection to the forum state or the defendant's in-forum activities. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).

"Except in 'exceptional cases,' a corporation is 'at home' only in its state of incorporation and in the state of its principal place of business." *Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 395 (E.D. Tex. 2022) (quoting *Daimler*, 571 U.S. at 137). As the Supreme Court has made clear, "a corporation that operates in many places can scarcely be deemed at home in all of them." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (quoting *Daimler*, 571 U.S. at 139 n. 20). Accordingly, "when a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how systematic and continuous, are extraordinarily unlikely to add up to an exceptional case." *Nunes*, 582 F. Supp. 3d at 395 (quoting *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016)). In effect, "it is incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

The classic example of an "exceptional case" is outlined in *Perkins v. Beguet Consolidated Mining Co.*, 342 U.S. 437 (1952). *See, e.g.*, *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 235 (5th Cir. 2016) ("The Supreme Court has found a sufficient basis for the exercise of general jurisdiction over a non-resident defendant in only one modern case—*Perkins*"). In *Perkins*, the defendant was a Philippine mining company that relocated its operations to Ohio temporarily as a result of World War II. 342 U.S. at 447. The company's president set up an office in Ohio, from which he continued to run the company just as he would back in the Philippines. *Id.* at 447–48; *see also Patterson*, 826 F.3d at 235 (discussing the "extensive contacts" in *Perkins*). The plaintiff in that case was an Ohio resident who sued the defendant on a claim that neither arose in Ohio nor related to the defendant's in-state activities. *Id.* Nevertheless, the Supreme Court held that the Ohio courts could exercise general jurisdiction over the defendant without offending due process. *Id.* at 448. As the Supreme Court has subsequently explained, general jurisdiction was proper in *Perkins* because Ohio was "the center of the corporation's wartime activities" and, as such, it became a "surrogate for the [corporation's] place of incorporation or head office." *Daimler*, 571 U.S. at 131 n.8.

In this case, there is no dispute that Binance is a foreign corporation, incorporated in the Cayman Islands. And while Binance has an office in Singapore, it does not have a "single corporate headquarters" (Dkt. #37 at p. 3). However, Gadasalli spends a significant deal of its briefing focused on the point that Binance is subject to general jurisdiction in Texas. Specifically, that Binance is "American as apple pie" given its participation in American culture through its U.S.-based entity—which would include Texas (Dkt. #37 at p. 2). Gadasalli also argues that Binance only chooses to assert its foreign status and claim that it has no ties to the United States whenever it is convenient for the company, and that it is "time to hold B[inance] accountable"

9

(Dkt. #37 at p. 2). Since Gadasalli's arguments are rather broad and do not make a specific contention regarding the principal place of business or state of incorporation, the Court will construe this argument that Binance should be subject to general jurisdiction in Texas because this is an "exceptional" case in which Binance is essentially at home here. The Court recognizes that a cryptocurrency exchange that has "an ecosystem" rather than any physical offices may be subject to a different analysis than the one that currently exists in the case law. However, given the lack of a new test to adopt, the Court will conduct an analysis if this is an example of one of those exceptional cases.

Post-*Daimler*, "[t]he proper inquiry now is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether the defendant's affiliations with the state are so 'continuous and systematic' as to render it essentially at home in the forum State." *Garcia Hamilton & Assocs., L.P. v. RBC Cap. Markets, LLC*, 466 F. Supp. 3d 692, 700 (S.D. Tex. 2020) (quoting *Daimler*, 571 U.S. at 138–39) (cleaned up). Gadasalli has raised various arguments regarding why Binance is essentially "at home" in Texas. The Court will group them in five different arguments and the Court will discuss each one in turn.

First, it argues that Binance uses various third-party companies in this jurisdiction to function. However, in doing so, Gadasalli does not point to a specific company name that operates in Texas or any specific fact that the Court views as backing up its claim. Binance points this out and responds that a recent case, *Lee v. Binance*, found that simply because Binance used U.S. based infrastructure, it was not sufficient to find that Binance is a "domestic exchange." Opinion and Order at 8, No. 1:20-CV-2803 (S.D.N.Y. Mar. 31, 2022), ECF No. 77. Although the Court recognizes that *Lee* was dealing with an issue not related to personal jurisdiction, the Court still finds that case persuasive. However, reliance on the *Lee* case is not necessary. Gadasalli failed to

include any specific third-party that Binance has an affiliation with or examine the specific connection to Texas, and therefore, the Court will not find that the contacts are so continuous and systematic to find that it is essentially at home.

Gadasalli's second argument discusses a point the Court discussed earlier in the context of Binance.US. The ability for individuals to use third-party VPNs to circumvent certain regulations will not be enough to meet the exceptional standard and subject a defendant to the Court's personal jurisdiction. *See Helicopteros*, 466 U.S. at 417. The VPNs are being used because Binance is currently not allowed to operate in the United States (Dkt. #32 at p. 16) ("Binance is not alleged to have any offices or employees in Texas, and Binance.com restricts United States users from accessing the platforms."). However, this situation is a bit different than the situation with Binance.US, because as Gadasalli alleges, there is evidence that Binance had a part in this wave to circumvent United States regulations to utilize the Binance platform (Dkt. #40 at p. 2). Although some of these actions may be attributed to Binance, again, there is nothing in Gadasalli's arguments that could point toward a specific message or an attempt to get Texas citizens involved with its foreign company. Instead, Gadasalli points to Binance officials that were attempting to get the message out that United States citizens should use VPNs, so that Binance was not subject to American regulations for those users. However, the Court views those comments as being directed at a general audience in the United States, not Texas alone. If general advertisements through national media are insufficient to confer general jurisdiction, the Court holds that the same must be true for any general messages that were directed at the entire United States. *See Frank*, 947 F.3d at 338. Therefore, the Court will not accept Gadasalli's second argument regarding why this is an exceptional case.

Gadasalli's third argument looks at a series of videos that was marketed as a Super Bowl campaign in 2022 that was put on by Binance (Dkt. #37 at pp. 15–16). The various videos involved celebrities such as J Balvin, Valentina Shevchenko, and Jimmy Butler, who encouraged individuals to invest in cryptocurrency, but to do their research and learn more about the basics of cryptocurrency before doing so. These videos do not specifically inform individuals to invest in Binance, although the company's name on top of the video may be an indication that was Binance's intent with the videos. Gadasalli points out that Jimmy Butler is a native-Texan and even played college basketball in Texas (Dkt. #24 at p. 10). The Court refuses to find that either the various videos or the fact that one of its celebrities is a Texan as sufficient contacts to find that Binance is "essentially at home" in Texas. Again, it is debatable whether this campaign was an advertisement at all, but even with a finding that it was, a nationwide advertisement is not enough to find that it is essentially at home in Texas. *Frank*, 947 F.3d at 338.

Gadasalli's fourth argument is that Binance has worked with American law enforcement in the past, specifically, the Texas State Securities Board on various investigations and compliance with the United States Attorney's Office for certain forfeiture proceedings (Dkt. #37 at pp. 13–14). Gadasalli's argument is without merit, considering the lack of case law there that would support a finding of general jurisdiction, but also as a matter of public policy concern. Foreign entities should not be viewed as "essentially at home" in a state simply because they have helped participate in an American investigation or because they have complied to convert "ill-gotten cryptocurrency" (Dkt. #37 at p. 14). This could instead discourage any further participation with American law enforcement or American proceedings. The Court refuses to set such a precedent, as Gadasalli's fourth argument will simply not be enough to satisfy this standard.

Gadasalli's last argument consists of a catch-all, arguing that Binance has made its presence well-known in the United States over the past few years by doing things such as sponsoring the 64th Annual Grammy Awards, buying an ownership in Forbes, and even serving as a sponsor for the 2022 White House Correspondents' Dinner (Dkt. #37 at pp. 14–15). However, such an argument suffers from the same flaw that Gadasalli made with its alter ego theory, as arguing that Binance operates in the United States does not allow for jurisdiction in Texas. Despite all of Gadasalli's arguments, the Court is not convinced that based on the facts alleged, that there is support for the proposition that Binance's presence in Texas can be considered a "surrogate for [Binance]'s place of incorporation or head office." *Daimler*, 571 U.S. at 131 n.8 (citing *Perkins*, 342 U.S. at 447).

Even taking Gadasalli's representations as true, the Court concludes that Binance's contacts fall short of "exceptional," since none of her arguments established that Texas serves as a "surrogate principal place of business" for Binance, and it surely does not rise to the level of the one exceptional case that has been recognized by the Supreme Court. *Nunes*, 582 F. Supp. 3d at 396. At best, Gadasalli presented an argument that Binance has a continuous presence in the United States, but just as the Court concluded with Gadassalli's alter ego theory, presence in the United States is not the end of the analysis.

### III. Personal Jurisdiction — Specific

Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state. *See, e.g.*, *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021). In evaluating whether due process permits the exercise of specific jurisdiction, courts consider: (1) whether the defendant has "purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from

the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Carmona*, 934 F.3d at 193 (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).

For there to be minimum contacts, a defendant must have "purposefully availed himself to the benefits and protections of the forum state such that he should reasonably anticipate being haled into court there." *Carmona*, 934 F.3d at 193 (internal quotations omitted). This requirement is the "constitutional touchstone" of personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Accordingly, establishing a defendant's minimum contacts with the forum state requires contacts that are more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id*. at 475.

If the plaintiff successfully satisfies the first two prongs of the specific jurisdiction analysis, "the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth*, 472 F.3d at 271. In this inquiry, the Court examines five factors: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. *Burger King*, 471 U.S. at 477. "It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

Here, starting with the "minimum contacts" analysis, Gadasalli seems to put Binance on trial for a claim that it did not make in its Amended Complaint (Dkt. #24 at p. 5) ("Additionally, numerous public reports have identified B[inance] as perhaps the largest vehicle in the world through which stolen cryptocurrency asserts are laundered by U.S. residents"). Gadasalli cites

14

numerous articles alleging bad conduct on Binance's behalf, but none of them specifically point to any contacts in Texas or Gadasalli's specific claim of civil conspiracy against Bulasa. In fact, Gadasalli cannot point to a single fact of how Binance is actually involved in this case. Instead, she points and states as a general matter, that "[w]ithout B[inance]'s participation, J[ohn] D[oe] would not have been able to launder the funds stolen from [Gadasalli]" (Dkt. #37 at p. 5). The Court does not view this as enough to constitute a valid minimum contact for the purposes of this analysis. Gadasalli argues that there must be a sufficient connection to Texas because "the ecosystem exists in Texas," but the Court disagrees (Dkt. #37 at p. 17). The alleged scheme in this case involves Gadasalli sending money to Bulasa or his accomplices at various times and to an account in New York (Dkt. #39 at p. 10). From there, someone would invest that money in cryptocurrency. However, there is no evidence that this conversion ever took place in Texas.

Based on the pleadings and Gadasalli's response to the pending motion, Gadasalli lacks the requisite information to show that Binance has minimum contacts in Texas that relates to this case. Based on the facts alleged, at some point, the alleged stolen money would get converted to cryptocurrency using Binance, but nothing indicates that Texas was involved in those transactions.

The Court understands Gadasalli's reasoning for including Binance as a party to this action. As Gadasalli points out in her briefing, if she is successful on this claim, she will need to "rely on the Court" to order Binance to convert the alleged stolen funds (Dkt. #37 at p. 14). However, this argument does not constitute a valid argument under the traditional specific jurisdiction analysis that allows the Court to proceed with Binance as a named party. The Court fails to see how Binance purposefully availed itself for the purposes of Gadasalli's claim, and besides the fact that Gadasalli, as the plaintiff in this action, suffered some harm in Texas, there is no route that will permit the Court to exercise jurisdiction over Binance. *See* Order Granting Motion to Dismiss at

7, *Guarini v. Doe*, No. 21-CV-81890 (S.D. Fl. Apr. 5, 2022), ECF No. 25 ("But the fact that Plaintiff was the victim of a crime in Florida committed by an unknown John Doe Defendant does not bear on Defendant Binance's contacts with the forum state.").

Therefore, because the Court finds that Gadasalli did not make a *prima facie* case on the first two prongs of the analysis, the Court need not conduct an analysis on whether the exercise of jurisdiction would be fair or reasonable.

The Court also recognizes that Gadasalli requested jurisdictional discovery. However, the Court fails to see how this tool could be successful, and therefore, will decline to utilize its discretion in allowing this continued discovery. In its request for jurisdictional discovery, Gadasalli argues that most of the information that it would acquire if allowed jurisdictional discovery would only contribute to the general jurisdiction analysis. The only potential valid reason that Gadasalli raises for allowing jurisdictional discovery is that it would look into the "use/location of computer servers in Texas through which the crime perpetrated upon Plaintiff was conducted" (Dkt. #37 at p. 8). However, in this case, Gadasalli failed to raise enough of a basis for the Court to allow for this jurisdictional discovery because, based on the facts that are currently presented to the Court, the Court it not sure that the request would add any "significant facts" that would change the outcome of this motion. *Monkton*, 768 F.3d at 434 (citing *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000)), Therefore, the Court will deny that request. Accordingly, the Court will dispose of Gadasalli's claims against Binance for a lack of personal jurisdiction, and therefore, it need not conduct an analysis under Rule 12(b)(6) regarding whether Gadasalli failed to state a claim.

**CONCLUSION**

Defendant Binance Holdings Ltd.'s Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction and Failure to State a Claim (Dkt. #32) is **GRANTED.**

It is further **ORDERED** that Divya Gadasalli's claim against Binance Holdings Ltd. for Civil Conspiracy, which is located in Count IV is **DISMISSED without prejudice.** All other claims by Divya Gadasalli will remain and all the other Defendants listed in Count IV will remain.

**IT IS SO ORDERED.**
**SIGNED this 22nd day of May, 2023.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE